Caroline V. McClure

v.

Thomas J. M. Otrich et al.

*Filed at Mt. Vernon October 7, 1886.*

1. Statute of Frauds—*must be pleaded.* The Statute of Frauds can not be relied on to defeat the specific performance of a parol contract for the exchange of real estate, unless it is pleaded or set up in the answer as a defence.

2. Witness—*competency—on the ground of interest in the result of the suit.* The true test of the competency of a witness when challenged on the ground of interest, is, whether he will either gain or lose by the direct legal operation and effect of the judgment in the case in which he is called to testify, or whether the record will be evidence for or against him.

3. On bill by a devisee of a deceased testator for the specific performance of a contract for the conveyance of land devised to the complainant, against the husband and infant child of the other party to the contract, after her death, a child of the testator, not entitled to the land under the will, is a competent witness to prove the contract upon which the relief is sought, having no interest in the result.

4. The rule which disqualifies a witness not a party to the record, does not apply to one who is called to testify against his own interest.

5. Specific performance—*how far a matter of right.* It is as much a matter of course for courts of equity to grant specific performance of a contract for the conveyance of land, when it is valid and unobjectionable in any of its features which address themselves to the discretion of the chancellor, as it is for courts of law to award damages for a breach of a like contract.

6. Same—*the particular case.* A daughter made a contract with her father, whereby she agreed to convey to him her reversionary interest in the place occupied by him as his homestead, he having a life estate therein, in consideration of which he was to convey to her, in fee, another farm, and pay $1000. The father, by direction of the daughter, conveyed the farm to her husband, and paid him the $1000, shortly after which she died, leaving an infant child, without having conveyed to her father, who also died, having devised the home place to his second wife, and the latter filed a bill for specific performance: *Held*, that even if the Statute of Frauds had been pleaded, the complainant was entitled to the relief sought. In such case, the performance by the father was such as to take the case out of the Statute of Frauds.

7. Parties—*to bill for specific performance—in case of a devise by the purchaser.* Where a party entitled to a conveyance of a tract of land under

:a contract fully performed on his part, devises the same to his widow, and she files her bill to enforce performance of the contract, the children of the deceased testator will not be necessary or even proper parties, as no decree can be entered either for or against them.

APPEAL from the Circuit Court of Alexander county; the Hon. O. A. HARKER, Judge, presiding.

Mr. JOHN M. LANSDEN, and Messrs. MULKEY & LEEK, for the appellant:

The witnesses Virginia Finley and Caroline S. McClure are clearly competent witnesses. 1 Greenleaf on Evidence, secs. 389, 390; 1 Phillips on Evidence, (3d ed.) 119; *Bennett* v. *Heathington*, 16 S. & R. 193; *Bradshaw* v. *Combs*, 102 Ill. 428.

Mr. W. S. DAY, for the appellees, contended that the heirs, and all parties claiming under Thomas J. McClure, should have been made parties, and therefore the heirs were just as incompetent witnesses as if they were joined as parties. *Alexander* v. *Hoffman*, 70 Ill. 114; *Packwood* v. *Gridley*, 39 id. 388.

As to their competency, see *Marshal* v. *Peck*, 91 Ill. 187; *Bragg* v. *Geddes*, 93 id. 39; *Welcher* v. *Blowney*, 104 id. 610; *McCann* v. *Atherton*, 106 id. 31; *Fisher* v. *Fisher*, 54 id. 231.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an appeal from a decree of the circuit court of Alexander county, dismissing a bill in equity, filed therein by the appellant, Caroline V. McClure, as devisee under the will of her late husband, Thomas J. McClure, deceased, against the appellees, Charles L. Otrich, and his infant son, Thomas J. M. Otrich, the former being the late husband, and the latter the son and only heir, of Mary Otrich, a deceased daughter of the said Thomas J. McClure by a former wife, to compel the specific performance of an alleged contract of sale by the said Mary Otrich to the said Thomas J. McClure, of certain real estate particularly described in the bill.

We perceive no difficulty in the case, either as to the law or the facts. The land embraced in the contract, which is sought to be enforced as to a part thereof in this proceeding, consists of two tracts, of fifty-three and eighty acres, respectively, and constitutes a part of what is known as the "McClure homestead." These two tracts originally belonged to Polly McClure, the first wife of Thomas J. McClure. She died intestate prior to 1853, leaving her surviving, Mary McClure, an infant daughter and only child. Her father, as tenant by the curtesy, occupied and cultivated these lands as part of the home farm, until his daughter Mary's intermarriage with appellee, Charles L. Otrich, which occurred in March, 1878. About the time of this event, McClure commenced negotiations with his daughter for the purchase of her reversionary interest in the two tracts in question. After several interviews on the subject, an understanding was reached between them in the month of November, 1878, by which the daughter agreed to exchange her interest in said lands for a place in that vicinity belonging to her father, known as the "James farm," and $1000 in cash, to be paid at the following harvest. The James farm consists of one hundred and sixty acres, and its rental value is shown to be some $700 or $800 per annum. In pursuance of this agreement, McClure, on the 12th of November, 1878, by the direction of his daughter, made and delivered to her husband, Charles L. Otrich, a deed for the James farm, who thereupon took possession of the premises, and from thence hitherto has had the undisputed control of the same. On the 30th of July, 1879, McClure paid to Otrich, with his wife's consent, $1000, the balance due her under the agreement, being in full performance of the contract of purchase on his part.

The conveyance by Otrich and wife to McClure, of her interest in the home farm, was not made at the time of the execution of McClure's deed to Otrich, for the reason, as is shown by the testimony, the parties did not know the descrip-

tion of the land. The matter was put off and neglected from time to time, until finally Mrs. Otrich died without its having been made at all, leaving her surviving, appellee Thomas J. M. Otrich, her only child and heir at law. Her death occurred in March, 1880, at the town of Anna, in Union county, where she had resided with her husband from the date of her marriage to the time of her death. The fact of her living at a distance, in another county, may, to some extent, account for her neglect and ultimate failure to make a conveyance to her father, as she should have done.

Thomas J. McClure died testate on the 23d of August, 1882. By his last will and testament he devised the fifty-three-acre tract in question to his widow, the appellant, and the west forty of the eighty-acre tract to Claude McClure, an infant son by his last wife. The east forty of the eighty-acre tract was left, doubtless by inadvertence, undisposed of by McClure's will, and the record in this case shows there was another suit in the court below, which was heard and determined together with this, the object of which was to settle the rights and claims of appellees and the children of McClure by his second wife, to the two forties just mentioned.

The foregoing facts, so far as material to the relief sought, are properly set forth in the bill, and were, in our opinion, sufficiently proved upon the hearing. It is difficult, therefore, to conceive upon what grounds the court below denied the relief prayed, for it is very clear none of the objections urged by counsel for appellees justify the action of the court in dismissing the complainant's bill and denying all relief. The defence interposed by the answer was a simple denial of the making of the contract set up in the bill, and a claim that the James farm and $1000 were merely a gift from McClure to his son-in-law. Although the Statute of Frauds is referred to in the argument by appellees' counsel, and is urged as a defence to the bill, yet no such defence is interposed, or even so much as referred to, in the pleadings, and consequently

that question is not involved in the case. (*Lear* v. *Chouteau,* 23 Ill. 39 ; *Warren* v. *Dickson,* 27 id. 115.) The decree, therefore, in view of the pleadings and proof, we regard as manifestly unjust. It not only deprives the complainant of all right and claim to the fifty-three-acre tract of land, but leaves Otrich in the absolute possession and ownership of the James farm, to say nothing of the $1000 paid by McClure on the exchange. It is clear, Otrich's title to this farm is absolute, at law, and if the widow and heirs are not entitled to equitable relief as to it, they are simply without remedy. As this farm is clearly shown, by the weight of evidence, to have been conveyed to Otrich upon the faith of his wife's agreement to convey her interest in the home place to McClure, it surely would be a travesty on legal justice, and wholly inconsistent with the great principles by which courts are universally controlled in administering equitable relief, to permit Otrich to thus keep that farm, and his son to retain his mother's interest in the home farm. We can not give our sanction to the proposition that the arms of equity are too short to reach such a case.

It is not to be understood from what is here said that we regard the decree below erroneous because the court did not cancel and set aside the deed for the James farm. On the contrary, as will appear further on, we think it very clear no such a decree, under the bill as framed, could have been properly entered. What is said in this connection is for the purpose of bringing prominently to view the manifestly inequitable consequences that would result from a denial of the relief prayed, and thus furnishing the most cogent of reasons why it should be granted.

It is claimed, however, by appellees' counsel, that the contract sought to be enforced is not sufficiently proved. This claim is based chiefly on the alleged incompetency of two of complainant's witnesses, namely, Virginia Finley and Caroline S. McClure, daughters of McClure, by appellant, his second

wife, and complainants in the other case, which was submitted
with this, as heretofore stated.   It is true, the controlling
question is the same in both cases, namely, whether the con-
tract alleged to have been made between McClure and his
daughter, Mrs. Otrich, is sustained by the evidence, and if so,
whether a court of equity, under the circumstances shown,
should specifically enforce its execution.   The mere fact that
the question is the same in both cases, is clearly insufficient
to render the witnesses incompetent.   The true test in every
case where the testimony of the witnesses is challenged on the
ground of interest, is, as is stated by Greenleaf in his work
on Evidence, "that the witness will either gain or lose by the
direct legal operation and effect of the judgment, or that the
record will be legal evidence for or against him in some other
action."  (Vol. 1, secs. *389, 390.*)   That this rule is substan-
tially correct, is fully sustained by other text writers and the
decided cases.   1 Phillips on Evidence, (3d ed.) 119-126 ; *Ben-
nington* v. *Heathington,* 16 S. & R. 193 ; *Bent* v. *Baker*, 3 T. R.
27.   Tested by these authorities, nothing could be clearer than
that the witnesses in question are competent, and their testi-
mony must therefore be considered in connection with that of
the other witnesses, in determining the rights of the parties.
It is manifest, that so far as the fifty-three-acre tract is
concerned, which is alone in controversy in this suit, it is to
them a matter of no legal consequence whatever whether a
specific execution of the contract is decreed or not.   If it is
not decreed, the infant son of Otrich will take it subject to
his father's dower.   On the other hand, if the complainant
is successful, she will take it absolutely, in her own right,—
so that in neither event would these witnesses take or lose
anything.   To the suggestion they would be interested to the
extent of the alternative relief asked, we perceive no force in
it.   The alternative prayer is, that if the court can not grant
the relief prayed, it will order and decree unto complainant
"such compensation as the facts and circumstances of the

case require, embracing, if necessary, the cancellation of the deed of November 12, 1878." It is sufficient to say, that there is nothing in the case made by the bill or the proofs, either with or without the testimony of these two witnesses, upon which compensation could be allowed. The bill is not framed with a double aspect, looking to compensation. There is no claim, either by appellant or appellees, that any of the lands involved in the controversy are not just what they were represented to be in the negotiations between McClure and his daughter. Nor does either party pretend that there has been any fraud, overreaching or misapprehension on the part of any one connected with the transaction,—hence there is not the slightest foundation for the compensation theory. If this bill had been filed to rescind and set aside the contract now sought to be enforced, together with the deed made in pursuance thereof, and the two witnesses in question had been called to prove the facts relied on for a rescission, there would be some force in the position of appellees; but as it is, there is none. In that case they would have been called to testify in their own interest, for if the suit proved successful, they would have been entitled, as heirs of McClure, to a part of the estate recovered. But looking at the case in hand from that aspect, we find it directly the reverse of the one suggested. Here, the witnesses were called to prove a state of facts which, if true, would clearly defeat any proceeding they might commence to have the contract and conveyance in question set aside,—the only possible way in which they could successfully assert any claim to the James farm. This shows conclusively that these witnesses were called to testify against their own interest, in so far as the case may be considered from the aspect suggested. While we are satisfied there is really nothing in the objection in any point of view, this affords a complete answer to it from appellees' own standpoint,—for it is well settled that the rule which disqualifies a witness not a party to the record, does not apply to one who is called to testify

against his own interest, as was the case here. 1 Greenleaf on Evidence, sec. 410.

The point is also made, that Mrs. Finley and Caroline S. McClure should have been made parties to the bill, and that they were omitted merely for the purpose of making them witnesses in the cause, which the law will not permit, and that for the purpose of determining their competency they must be treated as parties. We fully recognize this principle, but it has no application whatever to the facts in this case. As has already been shown, these witnesses had no interest, either present or prospective, in the subject matter of this suit. Under the bill and proofs, no decree could have been rendered either for or against them, and no relief was asked of them. It would therefore have been altogether improper to have made them parties to the bill.

As already indicated, counsel for appellees has treated the case as though the Statute of Frauds had been interposed as a defence, and his argument seems to assume that the question to be determined is, whether the facts established show such performance by McClure as to take the case out of the statute, —and doubtless the court fell into the same error, otherwise there is no accounting for its action, for, leaving the Statute of Frauds out of view, no rule is better settled than that it is just as much a matter of course for courts of equity to grant specific performance of a contract for the conveyance of land, where it is valid at law, fairly entered into, and unobjectionable in any of its features, which address themselves to the judicial discretion of the chancellor, as it is for a court of law to award damages for a breach of a like contract; and in such case, a court of equity is equally bound with a court of law to grant the appropriate relief, where properly applied to for that purpose. Here, as already seen, it is not claimed or pretended that the contract in question is objectionable in any particular whatever, and the evidence clearly shows there is no foundation for any such claim. The appellees simply

deny the existence of the contract, and urge in argument, merely, that not being in writing it is obnoxious to the Statute of Frauds. The courts of one or two of the States hold, it is true, that the statute may be availed of under a general denial of the plaintiff's right, such as was set up in the answer in this case; but the general and more reasonable doctrine on the subject, and that to which this court is fully committed, is, that the statute, to be made available, must be pleaded. But even if the statute had been interposed in a proper manner, we think it clear there was such a performance on the part of McClure as would have taken the case out of the operation of the statute; for, as already shown, to deny the relief in this case would be to aid, by inaction, the perpetration of a palpable fraud on the complainant, as devisee of her husband. It is true, the mere payment by the purchaser, of a moneyed consideration, will not, of itself, take a case out of the statute, where that defence has been pleaded. But that is not the case here. Mrs. Otrich and her husband quietly stood by and permitted McClure to convey to the latter, in part performance of his contract, a valuable farm, which the grantee is still holding and enjoying, and now the only thing appellees propose to do is to turn the devisees and heirs of McClure over to a court of law, to make what they can, in the way of damages, out of the broken contract, while the appellees, between them, propose to hold all the lands involved in the controversy. Even if the Statute of Limitations had not already run at law, is it not manifest the legal remedy would not be so efficacious,—indeed, would be wholly inadequate? The proposition seems too clear to admit of serious discussion.

The decree of the court below is reversed, and the cause remanded, with directions to the circuit court to set aside the order dismissing the bill, and to enter a decree for the specific performance of the contract, as therein prayed.

*Decree reversed.*