[S. F. No. 4355. In Bank.—April 1, 1908.]

## H. MAY PEARSALL et al., Respondents, v. JAMES E. HENRY et al., Appellants.

SPECIFIC PERFORMANCE—CONTRACT FOR SALE AND EXCHANGE OF LANDS— MODIFICATIONS—SUBSTITUTED ORAL AGREEMENT—NOVATION—PART PERFORMANCE.—In an action for specific performance of a contract for the sale and exchange of lands, though an unexecuted oral modification of the original written·contract cannot be enforced; yet, where it appears that the oral agreement was substituted by novation in the place and stead of a canceled written contract,

and that it provided different terms, and was fully performed on plaintiff's part, by conveyance of the lands belonging to him, he can enforce the substituted oral agreement according to its terms.

ID.—CONSTRUCTION OF CODE — SUBSTITUTED ORAL AGREEMENT NOT A MODIFICATION.—An oral agreement substituted by novation for a former written contract, is not an oral modification of the written contract within the meaning of section 1698 ·of the Civil Code, provided the substituted oral agreement is valid and enforceable.

ID.—STATEMENT OF FRAUD—PART PERFORMANCE—ACCEPTANCE OF CON- VEYANCES FROM PLAINTIFFS BY DEFENDANTS—ESTOPPEL.—Where the only question is as to the validity of the substituted oral agree- ment under the statute of frauds, and it appears that the convey- ance made by the plaintiffs to defendants was accepted under the new contract, notwithstanding the fact that it was agreed to be made under the former written contract, the defendants are estopped from claiming that such conveyance was not made in part perform- ance of the terms of the substituted oral contract, and that the new contract was void under the statute of frauds.

ID.—EQUITABLE BASIS OF PART PERFORMANCE—PRIOR WRITTEN OBLIGA- TION.—The rule as to part performance of an oral contract for sale or exchange of lands, is based entirely on equitable considerations; and there is no hard and fast rule under which the existence of a prior written obligation bars all inquiry on the subject. It is suffi- cient that, under the circumstances of the particular case, the act of part performance is referable to the oral contract.

ID.—ORAL CONTRACT TO EXCHANGE LANDS—PART PERFORMANCE BY PLAINTIFFS—LEGAL DEFENSE—RULE IN EQUITY.—Where an oral contract for the exchange of lands has been performed by the plain- tiff only, though the defendants would have a legal defense to an action ·against them on the contract, yet the rule in equity is that where there is an oral agreement by the terms of which each party is to convey lands to the other, a conveyance by one party on the faith of the agreement constitutes such part performance as will for the purpose of an action for specific performance take the whole case out of the operation of the statutes of fraud.

ID.—CONSIDERATION OF ORAL CONTRACT—SETTLEMENT OF DISPUTES.—A sufficient consideration for the oral contract appeared from evidence sustaining the finding of the court that it was based upon the existence and settlement of disputes between the parties.

ID.—EVIDENCE—WANT OF CONSIDERATION FOR WRITTEN CONTRACTS— SUPPORT OF PLEADING.—Where the defendants in their cross-com- plaint relied upon the previous written contracts, the plaintiffs in support of their answer to the cross-complaint, were properly allowed to introduce evidence as to a want of consideration therefor.

ID.—ORAL EVIDENCE TO EXPLAIN AMBIGUITY.—Oral evidence was admis- sible to show all the circumstances surrounding the parties at the time of the execution of a written contract, by way of explaining ambiguous clauses therein.

ID.—EVIDENCE—SUBSTITUTED ORAL AGREEMENT.—Evidence was admissible to show that the oral agreement relied upon by plaintiffs was substituted for the prior written contract to settle disputes arising thereunder.

ID.—PART PERFORMANCE A QUESTION OF FACT—PROVINCE OF TRIAL COURT—SUPPORT OF FINDINGS.—The question whether there has been a part performance of an oral contract on the part of the plaintiff, is one of fact to be determined by the trial court; and the question as to the credibility of witnesses, in case of conflicting evidence, is within the exclusive province of the trial court, and its findings must be deemed in such case supported by the evidence and will not be disturbed upon appeal.

ID.—FINDING AGAINST EVIDENCE—AMOUNT OF INCIDENTAL EXPENSE—AVOIDANCE OF NEW TRIAL—CONSENT TO MODIFICATION OF JUDGMENT.—Where it appears that a finding as to the amount of incidental expense allowed by the court is not sustained by the evidence, and to avoid a new trial on that particular question, the respondents' offer to remit the whole amount allowed from the judgment, the judgment will be modified in that respect, and the order denying a new trial will be affirmed, and the judgment as modified affirmed, at appellants' costs.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion rendered in Bank and in Department One.

Louis Titus, H. M. Wright, and Titus, Wright & Creed, for Appellants.

Page, McCutchen & Knight, *Amici Curiœ,* also for Appellants.

Campbell, Metson & Campbell, J. N. Gillett, Philip Mansfield, and Thomas H. Breeze, for Respondents.

THE COURT.—A rehearing of this appeal was ordered after decision in Department. Upon further consideration, we adhere to the Department opinion. As stated therein, section 1698 of the Civil Code must be held to be inapplicable where the offer is to prove a substitution of a new agreement for the prior written agreement. This is very clearly shown in the opinion in *Guidery* v. *Green,* 95 Cal. 630, [30 Pac.

786], where it was held that one sued upon a written agreement could show by parol evidence that a subsequent written agreement was executed upon the consideration and agreement between the parties that the former agreement should be canceled, and all claims of the plaintiff against the defendant thereunder waived. Speaking of such evidence, the court said: "Its purpose was to show that that agreement had been canceled by mutual consent, and had no longer any operative effect. Such evidence is as admissible as is oral testimony that the terms of a written agreement have been fully performed by the parties, or that the instrument evidencing such agreement has itself been canceled and destroyed by the concurrent act of both parties. In either case the object and effect of such evidence is not to change any of the terms of the contract, but to show that the contract has no longer any existence, and therefore cannot be made the basis of an action. The objection that the written agreement could be altered only by an agreement in writing, or by an executed oral agreement (Civ. Code, sec. 1698) has no application to the facts offered to be shown. The offer was to show that the subsequent written agreement had been substituted for the original agreement, and the oral agreement of which proof was offered was the agreement to make this substitution. It was not an offer to prove an executory oral agreement, but an oral agreement that had been fully executed by the substitution. This, in effect, was an offer to prove a novation. (*Farmers' N. G. Bank* v. *Stover*, 60 Cal. 387.)" (See, also, *Adler* v. *Friedman*, 16 Cal. 138.) It is true that to effect a substitution the new agreement must be valid in itself (*Adler* v. *Friedman*, 16 Cal. 138), and, solely by reason of the statute of frauds, the new agreement was one that was required to be in writing in order to be valid. But the objection on this score is fully answered by what is said in the Department opinion on the effect of the performance of Pearsall of his part of the contract, the conveyance to the defendants of the Del Norte County lands. Having accepted such conveyance under the new contract (which is the effect of the findings of the trial court), the defendants are no longer in a position to raise the objection that such new contract was not in writing. We do not understand the authorities relied on by learned counsel for defendants to hold that

the mere fact that the act relied on as part performance was something which the party performing had been obligated to do under a prior agreement is conclusive against the claim of part performance of the new oral agreement. Some of them say that to constitute part performance the acts relied on must be referable exclusively to the oral contract (see Page on Contracts, sec. 719), but as we understand it this means no more than in the light of all the circumstances of the particular case such acts are so referable. There is no hard and fast rule under which the mere existence of a prior obligation to do the acts bars all inquiry on the subject. The rule as to the effect of part performance is based entirely on equitable considerations, and when it is clearly and unequivocally made to appear that there has been a performance by a party of his part of an oral agreement required by the statute of frauds to be in writing, under such circumstances as to make it inequitable to allow the other party receiving the benefit thereof to repudiate it on the ground that it was not in writing, he is estopped from doing so. The question whether there has been a part performance of the oral agreement is necessarily one of fact to be determined by the trial court. If the testimony of plaintiffs' witnesses be taken as true, as to which the trial court was the sole judge, it affords unequivocal and satisfactory evidence of the particular oral agreement alleged by Pearsall, and showed acts of part performance referable exclusively, under all the circumstances, to such oral agreement. The findings of the trial court sufficiently show a consideration for the oral contract in the existence of the disputes between the parties and the settlement thereof, and there is sufficient evidence to sustain such findings.

In Department it was held that the evidence was insufficient to support the finding as to the amount of incidental expenses incurred by Pearsall in acquiring the Del Norte County lands, and for which, under the oral contract, he was entitled to reimbursement. The trial court found this amount to be $4,650, and included such amount, with interest from July 1, 1901, in the judgment. The judgment of this court was that the judgment and order be reversed, with directions to the trial court to retry only the issues regarding the expenditures on account of such incidental expenses, and to

enter judgment in favor of H. May Pearsall for the amount, if any, found to have been so expended, together with the amounts due by reason of the other findings. Plaintiffs for the purpose of obviating any further proceedings, have filed in this court their waiver of any further claim on account of such incidental expenses, and their consent that the judgment be modified by deducting therefrom the said amount of four thousand six hundred and fifty dollars, with interest thereon from July 1, 1901, leaving plaintiff, H. May Pearsall, entitled at the date of the judgment (April 22, 1904) to the sum of $46,443.11, with interest from said date at the rate of seven per cent per annum, and costs of suit taxed at $189.55. This obviates the necessity of a new trial.

The order denying the motion for a new trial is affirmed. The judgment is modified by inserting the amount of $46,-443.11 as the amount which plaintiff H. May Pearsall shall receive, in lieu of the $51,876.95 awarded, and as so modified, said judgment is affirmed as of its original date. Defendants shall recover the costs of this appeal.

Beatty, C. J., dissented.

The following is the opinion rendered in Department One, November 10, 1907, adhered to in the foregoing.

SLOSS, J.—This action was brought by Clarence E. and H. May Pearsall, husband and wife, against James E., George E., John H., and Charles B. Henry, copartners under the firm name of J. E. Henry & Sons. The complaint alleges that the plaintiff Clarence E. Pearsall during the months of February, March, and April, 1901, purchased a tract of redwood timber land in Del Norte County in this state, and paid thereon as part of the purchase price and for securing the title the sum of $39,009.61, six thousand four hundred dollars of which belonged to his wife, H. May Pearsall; that the said Clarence E. Pearsall also expended as incidental and necessary expenses in purchasing said lands the further sum of five thousand dollars, or thereabouts. It is alleged that on or about the twenty-third day of April, 1901, the defendants promised and agreed with the plaintiffs that if the plaintiffs would convey said lands to them, they, the defendants, would in the latter part of May, 1901, pay to plaintiffs the money they

had paid upon such lands as aforesaid, and the moneys expended by Clarence E. Pearsall as expenses in obtaining the same. It is then averred that the plaintiffs, relying upon this promise, conveyed all of said lands to the defendants, but that said defendants have failed and refused to pay any part of said moneys to plaintiffs. The complaint sets forth an assignment by Clarence E. Pearsall to H. May Pearsall of all his right, title, and interest in and to said sums of money, and asks judgment against the defendants for the amounts so alleged to have been paid for securing the lands and for expenses.

The defendants answered, denying among other things the making of the alleged agreement, and denying that the lands had been conveyed to them pursuant to any such agreement. The position of the defendants is clearly set forth in their pleadings, which include, in addition to an answer, a counter-claim and a cross-complaint. They allege that the conveyance set forth in the complaint had been made pursuant to the terms of two written agreements between the defendants and the plaintiff Clarence E. Pearsall. The first of these bears date the twentieth day of October, 1900, and after reciting that the parties of the first part (the appellants herein) contemplate purchasing from the California Redwood Company a tract of land in the county of Humboldt containing 16,800 acres, or thereabouts, at the price of thirty dollars per acre, and that said California Redwood Company has promised to Pearsall a commission of 2½ per cent on said price for making said sale, declares that the Henrys agree that in the event of their purchasing the said tract of land from the California Redwood Company, they will sell to Pearsall at the price of forty thousand dollars an interest in the tract bearing such relation to the whole tract as forty thousand dollars bears to the entire purchase price, less the commission. By this agreement Pearsall agrees to purchase said interest and that he "will in addition pay said parties of the first part any and all commission he may receive from the California Redwood Company." This agreement, considered by itself, had no reference to the lands mentioned in the complaint herein, but it was supplemented by the making of a second agreement dated February 8, 1901, which provides that "in consideration of certain favors extended to the

party of the first part (Pearsall) by the party of the second part (J. E. Henry & Sons) in the purchase of redwood timber lands in the county of Humboldt, the party of the first part hereby agrees to purchase for the party of the second part certain redwood timber lands in the county of Del Norte, in the state of California," in certain described townships and sections. The agreement goes on to recite that Pearsall has already secured options on the lands which the parties of the second part expect to purchase, and that papers in escrow are lodged in bank, and provides that Pearsall is to make out a list showing the above tracts of land on which he has options, together with the names of the owners and number of acres contained in each tract, and the price per acre which the several owners are to receive for their lands. On such tracts as the purchase price is fifteen dollars per acre or under, Pearsall is authorized by J. E. Henry & Sons to purchase, paying for same the prices agreed upon between the present owners and Pearsall, but Pearsall is not to buy any of the tracts of land mentioned for a price exceeding fifteen dollars per acre, without special instruction from the Henrys, "all deeds to be made in the names of the parties of the second part, who are to pay the prices at which the lands are now deeded in escrow." The Henrys agree to furnish Pearsall necessary funds to secure the different tracts. The parties of the second part further agree to pay the expenses of the party of the first part while he is engaged in securing the deeds provided for, said expenses not to exceed two hundred and fifty dollars. It is the purchase of the land in Del Norte County, described in this agreement of February 8, 1901, that gives rise to the present controversy.

In the pleadings on the part of the defendants, it is alleged that in December, 1900, they purchased the 16,800 acres of land in Humboldt County mentioned in the agreement of October, 1900, and that Pearsall received as a commission for making such sale the sum of eighty-nine thousand dollars. This is alleged to be far in excess of any sum paid by Pearsall for the lands purchased by him under the contract of February, 1901. By their counterclaim the defendants ask judgment against Pearsall for the excess, and by their cross-complaint they seek an accounting of the balance of com-

CLIII Cal.—21

missions that may remain in Pearsall's hands. The cross-
complaint also seeks to compel the conveyance of 320 acres
of land claimed to be a part of the tract purchased by Pear-
sall for the Henrys, and by Pearsall conveyed to J. N. Gillett,
who is made a party defendant to the cross-complaint.

The answer to the cross-complaint does not deny the execu-
tion of the written instruments in question, but alleges that
these instruments were executed by Pearsall without consid-
eration; alleges that after the making of these agreements dif-
ferences had arisen between Pearsall and the defendants
regarding their rights and obligations arising out of their
several contracts and that subsequently Pearsall and the
Henrys entered into a new agreement for the purpose of
settling all of the matters in controversy, and that by this
new contract it was agreed that the plaintiffs were to convey
to the defendants all of the lands secured by Pearsall, and
that the defendants should pay to the plaintiffs all sums of
money paid by them for the purchase of lands in Del Norte
County, and the expenses incurred in securing the same. The
defendants also agreed, as is alleged, to waive all claims
which they had for commissions received by Pearsall on the
sale of the lands in Humboldt County purchased from the
California Redwood Company, except 2¾ per cent of the
purchase price, which had heretofore been paid by Pearsall
to the defendants. Plaintiffs allege that their conveyance of
the land in Del Norte County was made in reliance upon this
agreement.

From this summary of the pleadings it will be seen that
there is no controversy about the fact that plaintiffs did con-
vey to defendants the land in Del Norte County. The real
dispute is as to the agreement under which this conveyance
was made, the defendants claiming that it was made by virtue
of the written agreement above described, and the plaintiff
contending that these written agreements were abrogated
and superseded by a new and different agreement. More
specifically, the difference between the parties relates to the
commissions to be paid by Pearsall to the Henrys upon the
sale of the lands in Humboldt County. If, as claimed by the
plaintiffs, only 2¾ per cent of the purchase price paid on
the Humboldt transaction was to be turned over, defendants
are largely indebted to the plaintiffs. On the other hand,

if, as is contended by the defendants, Pearsall was bound to account to them for the total commission amounting to eighty-nine thousand dollars, this amount was sufficient to repay him for all advances made in acquiring the Del Norte lands, and to leave a large balance due from him to the defendants.

The findings and judgment were in favor of the plaintiffs. So far as concerns the conveyanace of the Del Norte lands to defendants the court finds that the written agreements of October 20, 1900, and February 8, 1901, respectively, were executed as alleged in the answer and cross-complaint; that between the first day of February, 1901, and the twenty-third day of April, 1901, the plaintiff, Clarence E. Pearsall, purchased in his own name and partially paid for from his own funds, a tract of redwood timber land, situated in Del Norte County, containing 8115 acres, that he expended in purchasing said land the sum of four thousand six hundred and fifty dollars for expenses, and $39,009.61 on account of the purchase price, the cost of said land to him having been $12.50 per acre, exclusive of expenses. It is found that Pearsall received eighty-nine thousand dollars as commisisons on the sale of the 16,800 acres of Humboldt land, and that of this sum fourteen thousand dollars had been paid to defendants. It is further found that in the month of April, 1901, disputes arose between Pearsall and the defendants growing out of their written agreements, Pearsall claiming that the agreement of February 8, 1901, had been obtained from him by fraud, and the defendants claiming that they were entitled to the lands purchased by Pearsall at the exact price paid for the same, without allowing any commission or expenses, which claim was by said Pearsall denied, he claiming that the defendants were to pay $15.20 per acre for said lands. The defendants also demanded that said lands be immediately deeded to them, Pearsall claiming that there should be no conveyance until he had been paid at the price of $15.20 per acre. The finding as to the new agreement upon which this suit is founded is in the following words: "That upon the 23d day of April, 1901, plaintiff, Clarence E. Pearsall, and the defendant, James E. Henry, representing the firm of J. E. Henry & Sons, met in the city of Eureka, state of California, and made a full and complete verbal settlement of all accounts existing between

them as follows: Said James E. Henry, for said J. E. Henry & Sons, agreed with said Pearsall that for and in consideration of said Pearsall waiving all claims and demands against defendants over and in excess of $12.50 per acre upon the lands which had been purchased by him, to wit, the 8115 acres in the county of Del Norte, state of California, and deeding said lands at once to defendants, that defendants would faithfully carry out the terms of the agreement of October 20, 1900, in relation to deeding said Pearsall the amount of said lands represented by his $40,000 purchase as shown by said agreement; that the defendants would waive any and all claims to any commissions under said agreement, save and except 2¾ per cent which defendants had theretofore received, and would repay said Pearsall the entire amount of money he had paid out of his own and his wife's funds in the purchase price of said 8115 acres of land in Del Norte County aforesaid, and would repay said Pearsall any and all expenses he had incurred in the purchase of said lands, and that said defendants would pay said sums of money on or about the first day of June, 1901. That said Pearsall accepted the terms of said agreement and fully agreed thereto.'' The court found that Pearsall made the conveyance as provided in said agreement; that no part of the moneys paid by him for said lands or expenses incurred by him has been repaid; that he had transferred his claim against defendants to his co-plaintiff, H. May Pearsall, and directed judgment in favor of H. May Pearsall for the sum of $43,650.61, with interest, the total amounting, at the date of the findings, to $51,876.95. Judgment for this amount and costs followed, and the defendants appeal from the judgment and from an order denying their motion for a new trial.

Many of the findings of the court are attacked as unsupported by the evidence. Before proceeding to the examination of these points, we shall consider the contention of the appellants that the findings, even if sustained by the evidence, do not support the judgment. The argument in this regard is based primarily upon the proposition that the alleged agreement of April 23, 1901, by virtue of which the parties settled all of their then existing differences, and agreed upon an immediate conveyance by Pearsall of the lands, was void and unenforceable because not in writing.

The defendants urge that this oral agreement of April 23d was a mere modification or alteration of some of the terms of the agreements of October, 1900, and February, 1901, and since it was still executory was void under the provisions of section 1698 of the Civil Code. That section reads as follows: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." According to section 661 of the Civil Code, an executed agreement is one "the object of which is fully performed. All others are executory." If the agreement of April 23, 1901, is to be regarded as a mere modification or alteration of the then existing agreements, it must be conceded that it was not executed within the meaning of section 1698, and is therefore not now enforceable. An oral agreement altering a written agreement is not executed unless its terms have been fully performed. Performance on the one side is not sufficient. There must be a complete execution of the obligations of both parties in order to bring the modification within the terms of the statute. (*Henehan* v. *Hart,* 127 Cal. 657, [60 Pac. 426]; *Thompson* v. *Gorner,* 104 Cal. 168, [43 Am. St. Rep. 105, 37 Pac. 900]; *Platt* v. *Butcher,* 112 Cal. 634, [44 Pac. 1060]; *Mackenzie* v. *Hodgkin,* 126 Cal. 591, [77 Am. St. Rep. 209, 59 Pac. 36]; *Harloe* v. *Lambie,* 132 Cal. 133, [64 Pac. 88].)

But we think the agreement of April 23, 1901, as the same is found by the court, was not a modification or alteration of the written agreements, but was a new agreement superseding those then existing. The finding which has already been quoted at length does not indicate that the parties intended to alter one or more of the terms of the written agreements, leaving those agreements in other respects to remain in force. The idea conveyed by the finding is that these agreements were virtually abrogated, and that the new oral agreement was to take their place. It imposed new obligations upon the parties and each, in consideration of new promises then made by the other, agreed to do acts which, according to his own contention, he was not then bound to perform. To such new agreement, substituted for an existing written agreement, section 1698 of the Civil Code has no application. (*Stockton etc. Works* v. *Glenn's Falls Ins. Co.,* 121 Cal. 167, 175, [53 Pac. 565]. See, also, *Adler* v. *Friedman,* 16 Cal. 139.)

. But it is urged by appellants that even if the agreement of April 23, 1901, is not to be treated as an unexecuted oral modification of a written agreement, it is still, as an oral agreement for the sale of real property, invalid under subdivision 5 of section 1973 of the Code of Civil Procedure. Unquestionably this agreement which provided for the conveyance by plaintiffs of the eight thousand odd acres of land in Del Norte County, and the transfer by defendants of an undivided interest in the lands in Humboldt County, was an agreement which, by the provisions of the statute of frauds, was required to be in writing. But where the plaintiffs have, as it is here found they have, fully executed the agreement on their side, are the defendants in a position to raise the objection that the contract was not in writing? While full performance of so much of the contract as would bring it within the statute of frauds will enable either party to sue upon the remaining stipulations (Browne on Statute of Frauds, 5th ed., sec. 117) the statute will still prevent recovery when any stipulation which is itself required to be in writing remains unperformed. Here the contract as found required the defendants to convey an interest in the Humboldt lands. This stipulation being unperformed, and the contract being undoubtedly entire, the rule as just stated would make the bar of the statute applicable to any suit upon said contract. (*Fuller* v. *Reed,* 38 Cal. 100.) But this rule refers merely to the effect of the statute as a legal defense. Notwithstanding the applicability of the statute as a bar at law, there may still have been such part performance as will impel a court of equity to specifically enforce the contract. Where there is a verbal agreement under which each of the parties is to convey land to the other, it is generally held that a conveyance by one on the faith of the agreement constitutes such part performance as will in equity take the case out of the operation of the statute. (*Caldwell* v. *Carrington,* 9 Pet. 86; *McClure* v. *Otrich,* 118 Ill. 320, [8 N. E. 784]; *Farwell* v. *Johnston,* 34 Mich. 342; *Baker* v. *Scott,* 2 Thomp. & C. (N. Y.) 606. See *Swain* v. *Burdett,* 89 Cal. 564, 569, [26 Pac. 1093].) The case at bar is within the principle of these decisions, and the conveyance by plaintiffs therefore places them in a position to compel compliance by the defendants with the undertakings on their part.

It is further argued that the conveyance by plaintiffs cannot be treated as a part performance of the alleged oral agreement of April 23d, upon the ground that acts claimed to constitute a part performance must clearly appear to have been done with a view to carrying out the oral contract relied upon. (Browne on Statute of Frauds, 5th ed., sec. 454; *Williams* v. *Morris*, 95 U. S. 456; *Blum* v. *Robertson*, 24 Cal. 142; *Foster* v. *Maginnis*, 89 Cal. 264, [26 Pac. 828].) But whether or not the acts do so clearly appear to have been done is primarily a question of fact for the trial court, and the trial court here has found that the conveyance to the defendants was made pursuant to the oral agreement of April 23d. This is sufficient to meet the requirements of the rule. We are satisfied that if the evidence sustains the findings of the court those findings were properly held to result in the judgment entered.

Are the findings sustained by the evidence? The principal attack is directed against the finding of the making of the oral agreement of April 23, 1901. The appellants make an elaborate argument with a view to showing that the conveyance by Pearsall was made in recognition of his obligations under the written agreement of February, 1901, and that no oral agreement, as claimed by the plaintiffs, and found by the court, was in fact entered into. It is not to be denied that there are certain circumstances appearing in the record which lend support to this contention. Apart from the suspicion which must always attach to a claim that a formal agreement in writing has been superseded by an oral contract, much more favorable than the writing to the party who asserts the making of the new agreement, Pearsall's own testimony was greatly shaken by the production of letters in which he had made statements entirely at variance with his position at the trial. But his testimony as to the making of the agreement of April 23d was corroborated by several witnesses, and the degree of credit to be accorded to him, as to the other witnesses, was a question for the trial court. The witnesses for the plaintiffs testified that the agreement in question had been made. The witnesses for the defendants testified that it had not been. It was for the trial court to decide which set of witnesses was telling the truth. While it may be that the court reached the wrong conclusion on this question of fact, its decision is conclusive in this court, if

there was a substantial conflict of evidence, and it cannot be doubted that there was such conflict here.

It is found that Pearsall had expended in purchasing the lands and securing the options the sum of four thousand six hundred and fifty dollars as necessary and incidental expenses. The only testimony as to these expenses is that of Pearsall himself. Adding together all of the items testified to by him, the sum falls considerably short of the amount found by the court to have been expended by him. Indeed, the respondents make no attempt to point out any evidence which will sustain the finding that $4,650 was so expended.

The findings as to the amount paid out by Pearsall on account of the purchase price of the land are by no means satisfactory when measured by the evidence. The court made two findings relating to this item. Finding VIII is that Pearsall had paid upon the purchase price of the land the sum of $39,009.61. Finding IX declares that the actual cost of said lands to Pearsall had been the sum of $12.50 per acre, exclusive of expenses. The record discloses absolutely no evidence in support of the latter finding. Nowhere in the testimony is there any suggestion of a price of $12.50 per acre. Pearsall and those from whom he claims to have bought, all say the price to him was twelve dollars per acre. But since the ultimate and important question in this connection is how much Pearsall had expended in purchasing the land, an error in the finding as to the price per acre is of no consequence, if finding VIII that he had expended $39,009.61 is supported by the evidence. We think the record does contain sufficient evidence to support this finding, although that evidence is not as clear as might be desired. Pearsall testified that he had bought and paid for the 8115 acres at the rate of twelve dollars per acre. The amount so claimed to have been expended, after deducting advances made by the defendants and fourteen thousand dollars due them (according to Pearsall's contention) on account of commissions, left a sum greater than that found by the court to have been expended by Pearsall. While it is difficult, if not impossible, to ascertain from the evidence how the court arrived at the exact figure of $39,009.61, there was some evidence, not directly contradicted, tending to show that that amount, or more, had been expended by Pearsall.

The other findings, so far as they are material, are supported by sufficient evidence.

We come to the execeptions taken to the rulings of the court in sustaining and overruling objections to evidence. There are more than one hundred of these exceptions, and they must necessarily be treated briefly. Many of them are based on the action of the court in admitting correspondence, and evidence of conversations of the parties, prior to the agreement of February 8, 1901. It is urged that this violated the rule that the execution of a written contract supersedes all negotiations preceding its execution. (See Civ. Code, sec. 1625.) But here the plaintiffs in their answer to the cross-complaint averred that the two written agreements relied on by the defendants had been executed by Pearsall without any consideration whatever. That want of consideration for the execution of a writing, when properly pleaded, may always be shown by parol proof, is elementary, and the testimony in question was relevant to the issue framed.

Testimony of the oral agreement of April 23, 1901, was objected to on the ground that it was an oral unexecuted modification of a written agreement. That objections of this character were properly overruled follows from what has been said in discussing the sufficiency of the findings to support the judgment. If, as is shown in an earlier part of this opinion, the agreement of April 23, 1901, constituted, not a modification of the written agreements, but a new contract superseding them, oral evidence of such new contract was competent.

Pearsall was allowed to testify to the conversations which took place between him and some of the defendants at the time of signing the contract of October 20, 1900. This conversation related to the provision for turning over the commissions to be received by him on the Humboldt sale, and the purpose of the testimony was to show that the understanding was that only 2½ per cent of the purchase price, and not the entire commission, was to be accounted for. There was no error in this. The writing which recited that the commission was to be 2½ per cent, and then contained an agreement to pay over all commissions, was ambiguous. Whether by its terms Pearsall was to turn over only the 2½

per cent stated to be the amount shown, or was to turn over all commissions, whatever might be their amount, was fairly open to doubt. To clear up this ambiguity, which appeared, when it was shown that the commissions were in fact much more than 2½ per cent, it was proper to allow the plaintiffs to show the circumstances surrounding the execution of the writing, and all that was said in regard to these clauses. (*Balfour* v. *Fresno etc. Co.,* 109 Cal. 221, [41 Pac. 876].)

Some of the testimony offered to show what money had been paid by Pearsall through a bank in Crescent City was immaterial because not directly connected with the transactions in dispute. But we cannot see that the admission of this evidence was in any substantial way prejudicial to appellants. The most that can be said is that it had no tendency to support the claim of Pearsall as to the amount expended by him in the purchase of the lands. If it had no such tendency its admission was not a matter of sufficient importance to justify a reversal.

The exceptions taken in connection with the testimony regarding Pearsall's expenses in acquiring the land need not be considered in view of our conclusion that the evidence does not support the finding as to such expenses.

On the whole case we find no substantial error except that involved in the finding just mentioned. Since this does not affect the other issues, it will not require a retrial of the entire case. (*Emerson* v. *Yosemite G. M. Co.,* 149 Cal. 50, [85 Pac. 122]; *Robinson* v. *Muir,* 151 Cal. 118, [90 Pac. 521].)

The judgment and order are reversed and the cause remanded with directions to the trial court to retry the issues raised regarding the expenditures made by C. E. Pearsall on account of incidental expenses in purchasing the lands mentioned in the complaint, and to enter a judgment in favor of H. May Pearsall for the amount, if any, found to have been so expended, together with the amounts due by reason of the other findings.

Shaw, J., and Angellotti, J., concurred.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing.