[S. F. No. 3696. In Bank.—January 4, 1911.]

## C. IRVING WRIGHT, Appellant, *v.* W. F. BEESON et al., Respondents.

## W. F. BEESON, Respondent, *v.* C. IRVING WRIGHT, Appellant.

SALE—CONTRACT IN WRITING—MODIFICATION—EXECUTED ORAL AGREEMENT.—A written contract for the sale of a specified number of shares of corporate stock, a part of which was the subject of litigation and in the custody of the court, which provided for a certain price for the shares in litigation and a different price for the balance, but that no part of the agreed purchase price was to be paid until all the shares should be delivered and transferred, or ready to be transferred, on the books of the corporation, to the purchaser, can be altered or changed only by a contract in writing, or by an executed oral agreement.

ID.—PART PAYMENT BEFORE MATURITY—UNEXECUTED ORAL PROMISE TO PAY BALANCE.—A voluntary part payment by the purchaser on the price of the stock on deposit in court, before it was in condition for transfer, and his oral promise to pay the remainder before it became due, did not have the effect to modify the original contract as to the time for the payment of such stock. Such voluntary part payment before maturity did not constitute a consideration for the oral promise, since it did not benefit the purchaser, nor cause prejudice to the seller.

ID.—SEVERABILITY OF CONTRACT—PURCHASE OF PART IN PURSUANCE OF EXECUTED ORAL AGREEMENT.—The written contract, with respect to the shares of stock not in the custody of the court, and for which a different price was to be paid, was severable and subject to modification by a subsequent executed oral agreement for the purchase and payment thereof, on terms different from those contained in the original contract.

ID.—STATUTE OF FRAUDS—PROMISE TO PAY NOTE OF ANOTHER.—A special promise to pay the note of a third person, not based upon any consideration, and not in writing, is void.

APPEALS from judgments of the Superior Court of Fresno County and from orders refusing a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Frank H. Short, F. E. Cook, Page, McCutchen & Knight, and Page, McCutchen, Knight & Olney, for Appellant.

H. P. Brown, and Dixon L. Phillips, for Respondents.

SHAW, J.—The case involves two actions, relating to the same transaction, appealed from the superior court of Fresno County. Appeals are taken in each case from the judgment and from an order denying Wright's motion for a new trial. All the appeals are presented upon one transcript.

On September 13, 1900, in the superior court of Tulare County, Beeson began case numbered 9184, against Wright, alleging that, in June, 1900, he sold and delivered to Wright sixty shares of the capital stock of the Enterprise Lumber Company, for the agreed price of $5,285.12, which Wright then promised to pay; that Wright had paid thereon twenty-nine hundred dollars, that the balance, $2,385.12, remains unpaid, for which sum he asks judgment. On September 21,

1900, Wright began the action numbered 9149, against Beeson
and Brown. This is a suit upon a promissory note for nine-
teen hundred dollars executed by Beeson to Wright on May
11, 1900, payable one day after date with interest until paid,
and secured by the pledge of twenty shares of stock of said
company, the said twenty shares being a part of the sixty
shares mentioned in the suit of Beeson *v.* Wright (No. 9184).
It is alleged that Brown claims some interest in the stock.
Judgment was asked for the amount of the note and for the
foreclosure of the lien of the pledge of the stock. Brown
answered disclaiming any interest.

The two cases were tried together upon the stipulation that
the same evidence should be taken and considered, so far as
applicable, in each case. Judgment was given in favor of
Beeson in the case of Beeson *v.* Wright (No. 9184) for the
recovery of $2,385.12 alleged to be due as the balance of the
price of the stock. In the case of Wright *v.* Beeson (No.
9149), upon the promissory note, judgment was given in favor
of the defendants that the plaintiff take nothing thereby.
The only contention which it is necessary to notice is the claim
that the judgment in each case is contrary to the evidence.

There is no substantial conflict in the evidence, except upon
one point. On March 24, 1900, Beeson was the owner of the
sixty shares of said stock, Brown having at that time some
subordinate interest therein. Forty of these shares were the
subject of litigation in an action then pending in the superior
court, entitled Feusier *v.* Wright, and were deposited in court,
awaiting the final decision in the case. On the day mentioned,
Beeson and Brown executed a written contract with Wright,
whereby it is declared that they sold and delivered to Wright
the sixty shares of stock in controversy, forty of said shares
to be taken at the price of three thousand dollars, and the
remaining twenty shares at the price of nineteen hundred
dollars. The agreement further provided that no part of the
price fixed for said stock was to be paid until the entire sixty
shares should be delivered and transferred, or were ready to
be transferred, on the books of the corporation, to Wright, and
that, if it should become impossible to transfer the whole
sixty shares to Wright, he would reassign and convey to the
sellers all his interest therein.

On May 11, 1900, Wright, at the request of Beeson, ad-

vanced to Beeson the sum of nineteen hundred dollars, as a loan, for which Beeson executed the note sued on in the case of Wright *v.* Beeson and pledged to Wright, as security therefor, the twenty shares of stock which were not involved in the suit with Feusier. According to the testimony of Beeson, it was then understood that if the litigation with Feusier resulted in favor of Beeson and Wright, the stock should be retained by Wright and the note canceled. About that time the case of Feusier *v.* Wright was tried, and about June 12th a decision was announced by the court in favor of Wright, but no findings or judgments were filed or entered in the case until June 18th. On June 12th, after the decision was announced, Wright, Beeson, and Brown met on the street in Fresno. At that time Wright was secretary of the company, the twenty shares were in his possession as pledgee, and the forty shares were on deposit in court in the case of Feusier *v.* Wright and in control of the court. What took place at that meeting is the controlling factor in the case. The evidence upon that subject is conflicting. As the finding is in favor of Beeson and Brown, we must, in the consideration of the appeals, accept their version as true. They testified that Brown, at Beeson's request, presented to Wright a statement purporting to be a statement of account between Beeson and Wright. The statement charged to Wright three thousand dollars for the forty shares of stock and two notes due from one McFadzen, one of $621.25 to Brown, the other of $78.87 to Beeson, and gave Wright credit for a balance of three hundred and fifteen dollars due from one Young, leaving a balance due from Wright to Beeson of $3,385.12. Thereupon, according to their statement, Beeson stated that he wanted to settle up in full and close the transaction for the sixty shares of stock and wanted Wright to return the nineteen-hundred-dollar note. Wright said he could not pay all the money that day but that he could pay one thousand dollars, that he did not know when he could pay the remainder but that he would pay it within a short time. Beeson said he would need the money on July 6th to pay on some land he had bought, to which Wright replied that he would see that Beeson was not cramped and would make the payment in time to enable Beeson to meet the obligation for the property and that he would return the note, which he had left at his home, as soon as he could find it.

Wright then paid the one thousand dollars, and it was entered by him as a credit on the said statement of account. Beeson and Brown also testified that Wright agreed to take the stock in the condition it was in at that time, at the price of $5,285.12, and also agreed to pay the two notes of McFadzen, amounting to $700.12, and that he would allow the nineteen hundred dollars, advanced on the note and secured by the pledge of the twenty shares, to stand as a payment for the twenty shares and would cancel the note of Beeson for that sum; that thereupon they all called it a deal and said the trade was finished, Wright also agreeing that if an appeal was taken in the case of Feusier *v.* Wright he would take care of it at his own expense.

This was substantially all the testimony given in support of the suit of Beeson *v.* Wright for the balance of the alleged price of the sixty shares of stock. The execution of the note for nineteen hundred dollars is admitted and the only defense to it consists of the claim that by the transaction of June 12, 1900, Wright agreed to take the pledged stock in the condition in which it then was in satisfaction of the debt due upon the note. The transaction of June 12th was entirely oral. No writing modifying, rescinding, or amending the contract of March 24, 1900, was ever executed by the parties.

It is obvious that this transaction could not have operated to alter or change the written contract with regard to the forty shares of stock deposited in court. A written contract cannot be altered, except by a contract in writing, or by an executed oral agreement. (Civ. Code, sec. 1698.) Taking the testimony of Beeson and Brown at its full value, it is quite clear that there was no executed oral agreement concerning those shares. The price to be paid for them was fixed by the contract at three thousand dollars. They were then on deposit in court, not in control of the parties and not ready for transfer on the books of the company. There is no evidence that they ever have been ready for such transfer and therefore the price was not then due. Wright merely paid one thousand dollars of it and agreed to pay the remainder before it was due, or in time to enable Brown to meet a collateral obligation. Nothing further in that behalf was done. Furthermore, as to the forty shares, there was no consideration for the oral agreement that it is claimed was made. The voluntary payment of a part before

maturity did not constitute such consideration, since it did not benefit Wright nor cause prejudice to Beeson. (Civ. Code, sec. 1605.) There was no evidence of any consideration for the promise to pay the two notes of McFadzen, and, besides, that was a special promise to answer for the debt of another, and, not being in writing, nor within the scope of section 2794 of the Civil Code, it was void. (Civ. Code, sec. 1624, subd. 2.) The judgment in the case of Beeson *v.* Wright was upon an obligation not due at the time it was rendered and it is wholly without support in the evidence.

The evidence shows that there was, in substance, an executed oral agreement with respect to the twenty shares of stock. There was, in effect, an execution of that part of the contract. The part of the written agreement stipulating for the sale of the sixty shares as an entirety and providing that there was no obligation upon the buyer to take any of it unless all of it was available, was not an immutable compact. The parties still retained power to change it in any respect and to make further contracts relating to its subject-matter. The fact that separate and different prices were fixed for the two blocks of stock made it easy to alter the contract so that it could be executed as to one, without affecting it as to the other. If, after its execution, Wright had paid the nineteen hundred dollars specified as the price of the twenty shares, and Beeson and Brown, in consideration of such advance payment had completed the sale as to the twenty shares by transferring and delivering the same to Wright, no one would contend that the transaction was not complete and binding as an executed sale of the twenty shares, or that the original contract was not, to that extent, performed and discharged, including the obligation to pay the nineteen hundred dollars as the price thereof. This was exactly what the two transactions of May 11th and June 12th amounted to in legal effect.

The loan of nineteen hundred dollars on May 11th was made with the express purpose of transforming it into a payment of the nineteen hundred dollars, fixed as the price for the twenty shares, if the decision in Feusier *v.* Wright should be rendered in favor of the defendants therein. It was, in effect, so agreed by the parties at the time said loan was made. Beeson testified that the superior court decision was the one referred to in the conversation, the subsequent transaction of

June 12, when the decision of the superior court was rendered, confirms that view and as the court below found in accordance therewith it must now be taken as the fact. On June 12th, after the decision was given, the parties met and carried out the agreement of May 11th. The certificates for the twenty shares having been already indorsed and delivered to Wright in pledge at the time the loan was made, and he being the secretary of the company with power to enter the transfer on the books, no further delivery thereof was necessary. Beeson having received the nineteen hundred dollars, actual delivery thereof in payment was not required. All that was essential to complete the arrangement of May 11th, if it did not become complete by the mere happening of the event upon which the loan was to become a payment, was the mutual consent of the parties to accept as performance what they had previously received as a loan and pledge, respectively. Each thereupon accepted the decision of the superior court as the event which was to terminate the loan and pledge, each accepted the previous delivery of the stock and payment of the money as performance of the respective obligations, and the oral agreement to complete the sale of the twenty shares separately from the forty shares became then and there an executed agreement.

The fact that the note was not then canceled or destroyed does not prevent the transaction from having this effect. It was fully paid and satisfied by the transaction and being past due, it thenceforward remained without force or validity into whosesoever hands it might fall, whether surrendered or not. The effect of the entire proceeding was the same as if no loan had been made or note given on May 11th, and the nineteen hundred dollars had been paid and the stock transferred on June 12th, as part performance of the original agreement. Wright retains the stock and has a complete legal title thereto, and he should not be allowed to recover judgment on the note after it has been thus discharged.

In view of this conclusion, the evidence of the conversation at the time the note was given, to the effect that, although upon its face payable one day after date with interest, it was not to be payable until after the decision of the Feusier case and was not to bear interest, was manifestly harmless, even if erroneous.

As the appeals have been presented upon one transcript and

each party prevails in part, it is proper that each should pay one half of the costs of appeal.

The judgment and order in the case of *Beeson* v. *Wright* are reversed; the judgment and order in the case of *Wright* v. *Beeson* upon the promissory note are affirmed, and it is ordered that each party shall pay one half the costs of appeal and that the court below give the proper judgment for such costs if either party has paid more than one half thereof.

Lorigan, J., Henshaw, J., and Melvin, J., concurred.

SLOSS, J., concurring in *Beeson* v. *Wright.*—I agree with what is said in the foregoing opinion concerning the forty shares, and, therefore, concur in the reversal of the judgment and order appealed from in the case of *Beeson* v. *Wright.*

SLOSS, J., dissenting in *Wright* v. *Beeson.*—I dissent, however, from the affirmance of the judgment and order in *Wright* v. *Beeson.* The opinion of the majority proceeds upon the theory that the agreement of June 12th was executed with respect to the twenty shares and the nineteen-hundred-dollar note, and constituted a valid oral modification of the original writing, under section 1698 of the Civil Code. I shall not stop to discuss the appellant's argument to the effect that, even if the parties had, from the outset, been dealing with the twenty shares alone, the occurrences of June 12th would not have been sufficient to operate as a valid modification of a written agreement. Assuming their sufficiency to that end they could be given effect only by treating the sale of the twenty shares as severable from the remainder of the contract. This cannot be done without making for the parties and imposing upon them a contract which they never intended to make. That the original written agreement was entire is clear from its terms. It provided that no part of the price fixed was to be paid until the entire sixty shares should be delivered and transferred, or be ready for transfer. The alleged modification of June 12th did not purport to make the contract severable. The testimony of Beeson and Brown, as stated in the main opinion, is that Beeson declared to Wright that he wanted to settle up in full and close the transaction for the sixty shares of stock. If the oral agreement

then made was effective at all, it must have operated upon the rights of the parties to the entire full sixty shares. Neither Beeson nor Wright intended to make an agreement which should apply solely to the twenty shares. Just as the original agreement was entire, so was the attempted modification. If it cannot be given effect *in toto,* it cannot be given effect at all. To enforce it in part is to hold Wright to a payment for twenty shares, when the only contract he has ever made is an entire one for sixty shares. Viewing the modification, then, as an entirety, it was not effective unless fully executed. Execution in part would not suffice. "There must be a complete execution of the obligations of both parties in order to bring the modification within the terms of the statute." (*Pearsall* v. *Henry,* 153 Cal. 314, [95 Pac. 154, 159], and cases cited.) The majority opinion shows that the agreement remained executory as to the forty shares. As these shares were bound up with the others so as to make a single agreement for the sale of the sixty shares, the rights of the parties must be determined by their written contract. There is no foundation in either the findings or the evidence for a claim that the conversation of June 12th constituted a novation whereby a new contract was substituted for the existing one. (See *Pearsall* v. *Henry,* 153 Cal. 314, [95 Pac. 154, 159].) The parties were not, under the testimony of Beeson and Brown, undertaking to abrogate the old agreement and put a new one in its place, but were dealing with a view to carrying out the old agreement, subject to certain stipulated changes.

I think too that the court below erred in admitting evidence of an oral understanding, contemporaneous with the execution of the note, that such note (although upon its face made payable one day after date and bearing interest) was to be payable after the decision in the Feusier case and be without interest. (*San Jose Sav. Bank* v. *Stone,* 59 Cal. 183; *Cashman* v. *Harrison,* 90 Cal. 297, [27 Pac. 283]; *Leonard* v. *Miner,* 120 Cal. 403, [52 Pac. 655].)

Angellotti, J., concurred in the foregoing opinions of Justice Sloss.

Rehearing denied.