## STUART et al. v. McFADDEN.

No. 22554.   March 19, 1935.

Rehearing Denied April 9, 1935.

Robert S. Stuart and Welcome D. Pierson, for plaintiffs in error.

Hamilton & Howard, for defendant in error.

WELCH, J.   In the trial court the plaintiff recovered judgment against the defendants for $1,500, being the amount stated in a certain written contract of indemnity, and the defendants, as plaintiffs in error, prosecute this appeal.

The essential facts are that the plaintiff was negotiating the purchase of two city lots in Pawhuska from L. L. Sawyer, and was about to take a deed thereto from Sawyer. The plaintiff was not satisfied that the title was free from question and merchantable. He desired such a title only, and required, as a condition precedent to accepting the deed, that he be indemnified in the manner he thought to be proper. Accordingly it was arranged that the defendants Charles F Stuart and the American Na-

tional Bank of Pawhuska should furnish to the plaintiff, McFadden, a satisfactory contract of indemnity, and such contract was prepared and signed by the defendants and delivered to the plaintiff, and the stipulated deposit of money was made in the bank in escrow, whereupon he closed his pending transaction with Sawyer, and accepted the deed. Whether the defendants signed the contract for hire or upon being indemnified themselves is not material.

Since the rights and liabilities of the parties depend upon a construction of the contract, and since certain portions thereof tend to sustain the contentions of one party, while other portions thereof standing alone tend to sustain the contentions of the other party, it is necessary that we here copy the contract in full, and it is as follows:

### "Contract Indemnity.

"This contract and agreement made and entered into upon this 4th day of March, 1929, by and between Chas. F. Stuart of Pawhuska, Okla., party of the first part, hereinafter referred to as first party, and C. L. McFadden and L. L. Sawyer, parties of the second part, hereinafter referred to as second parties, and the American National Bank of Pawhuska, Okla., a corporation, party of the third part, hereinafter referred to as third party.

"Witnesseth, that whereas on the 3rd day of March, 1924, at Pawhuska, Okla., Mary A. Lynn or John P. Lynn entered into a contract for a deed with L. L. Sawyer, whereby they or one of them agreed to sell and convey unto the said L. L. Sawyer by good and sufficient warranty deed clear of all liens and incumbrances of whatsoever nature or kind, the following described real estate, to wit:

"Lots three (3) and four (4) in block two (2) East Lynn addition to the city of Pawhuska, Osage county, Okla.

"Upon the payment to the said John P. Lynn or Mary A. Lynn certain amounts of money under certain conditions all as set forth in said contract for deed; and

"Whereas, the said L. L. Sawyer has complied with all the terms and conditions contained in said contract which were obligatory upon him and the said John P. Lynn, Mary A. Lynn and L. V. Stangl, attorney in fact for Mary A. Lynn and John P. Lynn have executed to the said L. L. Sawyer a warranty deed conveying the above-described premises; and

"Whereas, the said L. L. Sawyer is selling said property and conveying the same to the said party of the second part and said second party has questioned the validity and merchantableness of the title transferred to

the said L. L. Sawyer by the warranty deed executed and delivered by John P. Lynn, Mary A. Lynn and L. V. Stangl, their attorney in fact; and

"Whereas, the said second parties have required that they be indemnified against any damages which he may sustain in the event the title to the above-described property prove to be defective in any particular; and

"Whereas, the said first party, at the request of Mary A. Lynn, desires to meet said requirements and indemnify the said second parties, their heirs, executors, administrators, and assigns against any defect in the title to the above-described property, and desires to save the said C. L. McFadden and L. L. Sawyer harmless and without damage if said title proved to be defective in any manner; and

"Whereas, the said C. L. McFadden will complete his transaction for the conveyance of the above-described property if he be indemnified against loss by reason of any defect in the title to the above-described property and if the said party of the first part will pay to the said second party the sum of $1,500 when the title to the above-described property is questioned by any person, firm or corporation by reason of any defect existing at the time of the making, executing, and delivering of the warranty deed of John P. Lynn, Mary A. Lynn, and L. V. Stangl to L. L. Sawyer conveying the above described property.

"Now therefore, in consideration of the sum of $1 and the completion of the transaction involving the above-described property between the C. L. McFadden and L. L. Sawyer and other good and valuable considerations, the receipt whereof is hereby acknowledged, the said party of the first part contracts and agrees with the second parties to deposit in the American National Bank of Pawhuska, Okla., a corporation, the party of the third part, to this contract, the sum of $1,500 to be placed on the deposit and in escrow to carry into effect the terms and provisions of this contract.

"It is understood and agreed by and between the parties hereto that the said $1,500 deposited in the American National Bank, as aforesaid is placed in said bank for the benefit of the said parties of the second part, their heirs, executors, administrators and assigns in the event the title of L. L. Sawyer to the above-described property shall at any time be questioned by any person, firm or corporation.

"It is further understood and agreed by and between the parties hereto that in the event the title of the said L. L. Sawyer to the above-described property is at any time questioned that the said third party shall pay to the said second parties, their heirs,

executors, administrators or assigns the said $1,500 and the said third party is hereby directed by the first party to pay to the second parties said sum of $1,500 if and when the title of L. L. Sawyer to the above-described property is questioned, and the third party hereby agrees to pay to the second party said sum of $1,500 to second parties, their heirs, executors, administrators, and assigns when and if the title of L. L. Sawyer to the above-described property is questioned.

"It is further understood and agreed by and between the parties hereto that this contract is intended to indemnify second parties against all former claims, liens, titles, charges, judgments, taxes, assignments and incumbrances of any nature or kind whatsoever, and that the title of the said L. L. Sawyer is an absolute and indefeasible estate of inheritance in fee simple to the above-described property.

"It is further understood and agreed by and between the parties hereto that in the event the title of L. L. Sawyer to the above-described property is at any time questioned and the said party of the third part pays to the said second party, his heirs, executors, administrators and assigns, the said sum of $1,500 second parties, their heirs, executors, administrators and assigns will convey the above-described property to the first party by quitclaim deed.

"It is further understood and agreed by and between the parties hereto that this contract shall be binding on the heirs, administrators, executors, successors, and assigns of the parties hereto.

"It is further understood and agreed by and between the parties hereto that this contract shall remain in full force and effect until all of the defects in the title of L. L. Sawyer to the above-described property shall have been cured and the title to said property accepted by said second party.

"It is further understood and agreed by and between all of the parties hereto that the liability of the surety Charles F. Stuart and the American National Bank, a corporation, shall in any and all events be limited to the sum of $1,500.

"In witness whereof, we have hereunto signed our names this 4th day of March, 1929.

"(Signed) Charles F. Stuart,

"L. L. Sawyer,

"C. L. McFadden,

"American National Bank of Pawhuska, Oklahoma, a corp.

"By Chas. F. Stuart, its President."

"Seal:

"Attest:          C. T. Everston, Secretary

"State of Oklahoma, County of Osage, ss:

"Subscribed and sworn to before me a notary public, in and for said county and state on this 4th day of March, 1929.

"Loretta Buist,

"Notary Public."

"My Commission Expires August 15, 1930. (Seal)"

Several months after the plaintiff, McFadden, accepted the deed from Sawyer, and the contract of indemnity from the defendant, he negotiated a sale of the lots to one Wagoner, who by written contract agreed to purchase the lots for $1,500, conditioned upon the plaintiff's ability to furnish good and merchantable and satisfactory title. The title was examined by a reputable member of the bar, who disapproved the title of the plaintiff, McFadden, on account of certain defects, the objection being made, among others, that in an action in the district court it had been adjudged that one of the deeds in the chain of title from one Lynn to his wife was void as being in fraud of creditors, and the further objection that certain money judgments had been rendered in the state district court of Osage county, and in the United States District Court, against John P. Lynn, a former owner of the property, at a time after he had acquired title to these lots, and before he had executed his deed conveying these lots to his grantee. Thereupon the purchaser, Wagoner, questioned and refused to accept the title.

Thereafter, McFadden, as plaintiff, instituted this action in the trial court. The plaintiff tendered a quitclaim deed to these lots to the defendant Charles F. Stuart, as provided for in the twelfth paragraph of the contract of indemnity, upon his theory that when the title was in good faith questioned, as referred to in the ninth, tenth, and twelfth paragraphs, and when such questioning of the title had resulted in his losing the sale of the lots to his purchaser, Wagoner, that he, the plaintiff, was then entitled to demand payment of the sum of $1,500 upon his executing and delivering the quitclaim deed to the defendant Stuart, as provided in paragraph 12 of the contract.

The defendants, by answer, denied the right of plaintiff to any recovery, alleging, in substance, that the title to the lots was in fact good and free from any defect; that the purpose and intent of the indemnity contract was only to indemnify plaintiff against loss if the title should in fact fail; that plaintiff, by his deed from Sawyer, had

in fact obtained a good and sufficient title, and that the district court judgment holding the Lynn conveyance void as in fraud of creditors had subsequently been reversed on appeal to the Supreme Court. Other material contentions in defense will be noted later.

Further facts are that while the district court judgment was reversed in this court, that was not done until some eight or nine months after Wagoner had agreed in writing to purchase the lots from McFadden, and had procured an examination of the title and questioned and refused it. So that at the time Wagoner and his attorney examined the title, there existed the judgment rendered in the district court of Osage county adjudging that one of the deeds in the chain of title was void.

In reference to the judgments rendered against Lynn in the United States District Court, there had been rendered seven judgments, all prior to the time of Wagoner's undertaking to purchase these lots. At the time Wagoner examined and refused the title, an execution had been issued on one of such judgments and levied upon certain other real estate of the judgment debtor, Lynn. These federal court judgments, though rendered in the District Court of the Western District of Oklahoma, had not been transcripted to and filed in Osage county, and it was later determined in that federal court that said judgments did not constitute liens on the land of the judgment debtor, Lynn, located in Osage county, and the execution above referred to was in fact subsequently recalled by court order, but that did not occur until some time after the prospective purchaser, Wagoner, had questioned and refused McFadden's title. So that at the time he did question and refuse the title there existed the seven judgments rendered in the United States D'strict Court as aforesaid, in favor of the United States of America, and in one of the cases, apparently as a test case, the United States was undertaking to enforce the judgment and establish the same as a lien on the lands of the judgment debtor, Lynn, in Osage county.

There were also six money judgments that had been rendered against Lynn in the district court of Osage county in 1926, 1927, and 1928. They were shown of record and observed by Wagoner and his attorney in examining the title. Those judgments had not been paid nor satisfied, and, as far as the records disclosed, those judgments were liens or apparent liens on these lots.

While admitting that these judgments were rendered while the judgment debtor, Lynn, held legal record title to these lots, the defendants contend that prior to the rendition of those judgments, Lynn had contracted and agreed to sell the lots to his subsequent grantee, and that his purchaser, under contract of sale, was in possession of the lots and residing thereon prior to the rendition of the judgments, and that therefore such purchaser, and not the judgment debtor, was in fact the owner of the lots, and that therefore no lien attached in favor of the judgment creditors. While that appears to be shown by the evidence introduced in the trial of the cause, and known to be true by Lynn, and thereafter discovered to be true by defendants, there is nothing to indicate that any such facts were known to plaintiff or to Wagoner. That was not shown to be true in detail by the records in the office of the county clerk of Osage county, and therefore could not have been and was not shown to be true in detail by the abstract of title to the real estate which was submitted to Wagoner and examined and questioned and refused by him.

In construing the contract of indemnity, we are required to consider all portions of it, and must determine its purport and intent from the whole thereof. We cannot determine that from a consideration of one or more portions of the contract to the exclusion of the remainder. We are so guided by our statutes, sections 9460-9465, O. S. 1931.

A consideration of paragraph 5 of the contract, or paragraphs 5 and 6 of the contract, if standing alone, might tend strongly to support the defendant's theory that the plaintiff could not recover unless his title failed in fact, and then only such recovery as would compensate plaintiff for the damage suffered. Upon the other hand, a consideration of paragraphs 8, 9, 10, and 12 would leave no question but that the plaintiff, upon any good-faith questioning of his title, would have the right to tender his quitclaim deed to the first party, Stuart, and receive and collect the sum of $1,500 named and stated in the contract.

From an examination of the entire contract and of the provisions thereof, considered in the light of this record, we deem these conclusions inescapable: (1) That the plaintiff desired a valid and merchantable title that would freely pass without provoking any question as to whether it was valid and merchantable; (2) that by the terms of the contract the defendants desired to

guarantee to plaintiff that the title was valid and merchantable, and that if it was questioned on account of any record defect in title, he could deed over the land by quitclaim deed and have the return of the $1,500; (3) that by the express terms of the contract the defendants bound themselves to so indemnify plaintiff; (4) that the method of indemnity was the deposit of $1,500 in money in the American National Bank of Pawhuska, Okla.; (5) that by the express provisions of the contract the plaintiff might tender his quitclaim deed to the property and receive said refund of $1,500 at any time if the title to the property should be in good faith questioned on account of any record defect in the title.

The title was questioned and refused by the prospective purchaser, Wagoner. The plaintiff tendered his quitclaim deed, and it would seem to follow that he was entitled to receive the $1,500.

The defendants contend that the questioning of the title by Wagoner was not justified, and was not in good faith.

This questioning of the title was based upon the state district court judgment shown of record in the court records of the county where the land was situate, and that judgment at the time of the questioning of the title was a record cloud upon, or record defect in, the title. That judgment determined that a certain prior deed in the chain of title was void. That would certainly affect the title of the plaintiff, which was based on mesne conveyances from the grantee in the deed adjudged to be void. It is true that at a subsequent date that judgment was vacated by decision of this court on appeal, but at the time the title was examined and questioned and refused by Wagoner, the judgment had not been so vacated. Wagoner's questioning of the title was also based upon the existence of the six money judgments rendered in the state district court of Osage county, and the seven federal court judgments. Those judgments were money judgments against Lynn, who was also a former owner of the property, and they were rendered against him before he conveyed the premises to the next owner in the chain of title. These federal court judgments had not been transcripted to and properly docketed in the county where the land was located, but the United States government was proceeding in an effort to impress the judgments as a lien on lands owned by Lynn, upon the theory that they became a lien on his land without the necessity of being so transcripted to the county where the land was situate. The position and contention of the United States government, the judgment creditor, was not sustained, but the matter was not so determined until some time after Wagoner had examined and questioned and refused the title. The defendants contend also as to all those judgments that while the record title to the lots was in Lynn at the time of the rendition of these judgments, in fact he had already sold the property, and that his purchaser was in possession, and the actual owner, though the deed from Lynn to him was not executed until some time thereafter, but, so far as the record discloses, the lots were in truth and in fact owned by Lynn when these judgments were rendered, and if the contentions of the judgment creditor, the United States government, should have been sustained, then this land would have been subject to the lien of these several federal court judgments, so far as the record disclosed.

The defendants also plead in their answer, and now urge, in substance, that Wagoner was not a bona fide purchaser, and that his contract to purchase and his purported examination and questioning of the title was a subterfuge. However, the contract of purchase was in writing and in evidence. The trial court also observed the witnesses and heard their oral testimony, including the real estate agent who negotiated the sale to Wagoner, and was interested in the efforts to clear the title so that Wagoner could and would accept it, and knew that the title was refused by Wagoner. The evidence does not justify the contentions of the defendants, but does justify the contrary conclusion by the court.

Without regard to whether the title did or did not subsequently fail, we are convinced that the questioning of this title by Wagoner, and his refusal to take the title on account of shown defects, was in good faith.

The parties to this action having contracted that upon any questioning of the title the plaintiff might deed the land over by quitclaim and receive the $1,500, his right to do so must be sustained. No contention is made that any unreasonable time elapsed between the making of the contract of indemnity and the date of plaintiff's election to deed over the land and receive the $1,500 provided for in the contract; nor is the validity of the contract in any manner questioned. The defendants' contention is that the contract should be construed according to their theory heretofore stated in

this manner, but with that contention we cannot agree for the reasons stated.

We cannot say that the trial court erred when it passed upon the facts, construed the contract, and rendered judgment for the plaintiff. That judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and CORN, JJ., concur.