BANKS et al. v. CITY OF ARDMORE et al.

No. 29836. April 8, 1941.

*112 P. 2d 372.*

Wm. G. Davisson, of Ardmore, for plaintiff in error.

J. B. Moore, of Ardmore, for defendant in error.

HURST, J. This is an action by Virginia Banks and Mattie J. Anderson to enjoin defendant city from permitting hunting upon Mountain Lake and the lands of plaintiffs adjoining the lake. The trial court granted the injunction, but held that the city was the owner of certain lands covered by the waters of the lake and that the city could lawfully fence the lake to prevent its pollution by the cattle of plaintiffs. Plaintiffs appeal from that part of the judgment favorable to the city, and the city has filed a cross-appeal from that part granting the injunction.

Plaintiffs inherited from U. S. Joines a portion of the lands surrounding Mountain Lake, which is the source of the city's water supply. In his lifetime Joines owned a part of the lands now covered by the lake, and a large part of the land adjoining the lake. The lake was formed by a dam constructed by the city across Hickory creek in 1923. Prior to the construction of such dam Joines had enjoined the city from constructing a pipe line upon his land for the purpose of taking water from Hickory creek, and the city had brought condemnation proceedings to acquire a right of way for its pipe line and to appropriate the water of Hickory creek, in which action commissioners appointed to ascertain the damages which Joines would sustain thereby awarded him the sum of $40,000. The award was set aside by the court, and thereafter Joines and the city entered into a contract, dated March 10, 1922, in which Joines conveyed to the city a tract of ten acres upon which the city was to construct a dam across Hickory creek to create a reservoir in which the waters of the creek were to be impounded. When the dam had been completed and the reservoir filled with water so that the high-water mark thereof could be definitely ascertained, Joines was to convey to the city that portion of the lands *owned by him* which were inundated thereby, and an additional strip 25 feet in width adjacent to and surrounding the impounded waters. If the city at any subsequent time desired to increase the height of the dam so as to inundate further parts of the land, Joines agreed to convey such other and further portions of the lands *owned by him as aforesaid* as may be covered by the waters impounded, and 25 feet of additional land adjacent thereto. It was stipulated that the water going into the lake, and the surrounding land, would not be put to any use which would pollute the water, or render it unfit for use, and that the city might police it to prevent pollution, and that nothing contained in the contract should be so construed as to prevent the free and unrestricted use of any portion of the lands not deeded to the city for ranch and grazing purposes, or the development thereof for minerals. It was further expressly agreed that there should be no hunting on the lake or the land deeded to the city. This contract was executed by Joines and his wife as first parties and the city as second party, and the consideration of $25,000 was paid by the city to Joines. The city completed the dam early in 1923, and the lake filled to the high-water line during the spring or summer of that year. It covered some 210 acres of land.

On April 23, 1925, Joines executed and delivered to the city a warranty deed to carry out his agreement to convey the land inundated by the lake. This deed conveyed 50.28 acres, but it did not include the submerged portions of two tracts of land, containing some 25.84 acres, purchased by him between the time the contract was made and the time the deed was delivered, nor did it

include all the land owned by Joines at the date of the making of the contract which was covered by the waters of the lake. After the lake filled, the city had possession and control thereof, fenced a portion of it, and issued licenses to fish thereon. Thereafter it passed an ordinance permitting hunting on the lake, and thereupon this action was commenced.

1. Plaintiffs' first contention is that the trial court erred in holding that by the contract Joines and his wife intended to and did obligate themselves to convey to the city all land owned by them which was inundated by the lake, whether owned by them at the time the contract was signed or subsequently acquired, and that the title to the submerged portions of the two tracts acquired by Joines after the making of the contract passed to the city, and that the city also acquired title by prescription by reason of its open and exclusive possession of, and exercise of ownership over, the property for more than 15 years.

The first paragraph of the contract provided for the conveyance of the ten-acre tract upon which the dam was to be located. The second provided:

". . . The parties of the first part do hereby grant unto the party of the second part an easement or right to use such parts of Section Twenty-two and other lands in Township Two South, Range One West, lying to the North, northwest and northeast of said dam site as are *now* owned by the parties of the first part, which will be covered by the water impounded by the erection of said dam aforesaid. . . ."

"Provided, further, however, that when the said dam shall have been erected and it shall have been definitely determined by impounding the said waters aforesaid, or by a survey by engineers acting under the joint supervision of the parties hereto, just what portions of said lands will be inundated thereby, parties of the first part hereby agree that they will execute a warranty deed to all of such lands so inundated or to be inundated owned by them in Township Two South, Range One West,

lying to the North, northwest and northeast of said dam site, together with an additional strip of land twenty-five feet in width adjacent to and surrounding the waters so impounded."

The deed of April 23, 1925, after particularly describing the land conveyed, recited:

"It is the intent and purpose of this grant to convey to the grantee the portions of the S E ¼ of the N E ¼ of the N E ¼, and of the S E ¼ of the N W ¼ of the N E ¼, and of the S E ¼ of the N E ¼, and of the E ½ of the S W ¼ of the N E ¼, and of the N E ¼ of the N E ¼ of the S W ¼, as are actually covered by the water of the dam of said City Lake at its present height.

"It is also the intent and purpose that this grant shall cover a strip of land extending back twenty-five (25) feet from the edge of the water of said City Lake at high water stage, wherever the lands covered by such twenty-five foot strip were owned by the grantor on the 10th day of March, 1922."

The two after-acquired tracts are not included in the subdivisions listed in this recital. Plaintiffs contend that the words "all of such lands so inundated or to be inundated owned by them in Township Two South, Range One West," contained in the last-quoted portion of the second paragraph of the contract, refer to lands "now owned by the parties of the first part" mentioned in the first-quoted portion of the second paragraph, and that the intention not to include any part of lands thereafter acquired by Joines plainly appears, and is confirmed by the quoted portion of the deed.

The city asserts that the obligation to convey does not refer solely to the lands upon which the easement is given, but extends to all inundated land then owned or thereafter acquired in township 2 south, range 1 west. We think the above-quoted portion of the contract is not clear as to just what lands were to be conveyed. The words "now owned" are used in the first paragraph granting the easement, but only the word "owned" is used in the second

614

paragraph agreeing to convey. It is therefore necessary to examine the entire instrument, and the circumstances surrounding the making thereof, to ascertain the intent of the parties. In ascertaining the intent of the parties the whole contract must be examined. Stuart v. McFadden, 171 Okla. 401, 43 P. 2d 131. The language employed, the subject matter, and the surrounding circumstances, will all be looked to. Hud Oil & Refining Co. v. Smith, 179 Okla. 412, 65 P. 2d 1011. In arriving at the intent of the parties to the contract involved herein the surrounding circumstances are especially important. The city sought to secure for its use the water, which it could only obtain from the Joines lands. Joines objected to the taking of the water, and litigation over the matter was pending. An award of $40,000 to Joines to compensate him for the taking of the water had been made and set aside. From the evidence it appears that many influential citizens of the city were urging Joines to recede from his refusal to permit the use of the water. The city had purchased some land in the area upon which the reservoir was to be located, and had constructed its pipes up to the Joines land. The contract was entered into to settle the litigation between the parties, and to adjust all differences between them. While the value of the 50.28 acres of land deeded by Joines to the city is not shown, it is fairly apparent that the thing of value to the city, and for which it paid the sum of $25,000, was the right to build and maintain the reservoir. The fact that Joines agreed that if the height of the dam was raised he would deed such additional land as might be submerged without further consideration indicates that the land was not of great value, and coupled with the agreement not to use the surrounding land or the waters flowing into the lake for any purpose which would pollute the water, or render unfit for the city's use, and the omission from the contract of any reservation by Joines of the right to use the water supply for any purpose of his own, evidences his intent to convey to the city all right to the impounded water, and such of his lands as might

be covered thereby. While the contract purports to cover only lands owned by him, it evidently was made upon the assumption that the city would procure such land of other owners as was necessary for its purpose. It is also significant that several tracts which were owned by Joines when the contract was made, and which were partly inundated, were omitted from the deed to the city, and that Joines at no time ever asserted any right to the waters of the lake by reason of his purchase of the two tracts bought by him after the making of the contract, or that he ever demanded payment for the submerged portions thereof, although he lived until 1933. Two witnesses, one of whom was city manager and the other a member of the city council at the time the contract was made, testified that at that time Joines stated to the city council that he intended to buy one of these two tracts, which could be purchased for some $7 per acre, and that it would go in with the rest of the land. This evidence was competent and admissible upon the question of intent. Dike v. Martin, 85 Okla. 103, 204 P. 1106; Restatement, Contracts, § 242. And the fact that Joines was dead did not preclude the witnesses, not parties to the suit, from testifying to his statement. First Nat. Bank of El Reno v. Davidson-Case Lbr. Co., 52 Okla. 695, 153 P. 836.

Plaintiffs stress the fact that Joines paid the taxes upon the two tracts, and that he was in a measure in possession of the lake, at least so far as to deprive the city of exclusive possession thereof, by reason of the fact that his cattle used it as a watering place. But it is shown that Joines also paid taxes upon all the lands which he conveyed to the city, along with several thousand acres of other land owned by him in the vicinity of the lake, rendering payment on the two after-acquired tracts inconclusive as evidence of claim of title to the submerged parts thereof. As to the use of the lake by his cattle, there is no evidence that he claimed any right to so use the lake. The city fenced a portion without objection on his part. His cattle watered at the unfenced portion

just as the stock of any other person who lived adjacent to the lake could have, if there had been others living in the vicinity. We do not regard this as evidence of possession. It shows rather a permissive trespass. Plaintiffs also emphasize the above-quoted recital in the deed of April 23, 1925, as confining the conveyance to lands owned at the date the contract was made. But the deed also omitted several tracts of land which Joines was obligated to convey under his contract. No evidence was produced as to why that clause was embodied in the deed, or by whom the deed was prepared. As the trial court found, and the parties concede, that the after-acquired land was not included in the deed, the inclusion of this clause was, so far as we are able to determine from the record, wholly unnecessary for any purpose. It was wholly inoperative and meaningless, as all of the land described in the deed was owned by Joines on March 10, 1922. It is pure surplusage, which may be rejected or disregarded in arriving at the intent of the parties. Devlin on Real Estate— Deeds (3d Ed.) § 994; Elliot on Contracts, § 1535; Page on Contracts, § 2032; 13 C. J. 538; 6 R. C. L. 847; 12 Am. Jur. 775.

We agree with the plaintiffs, and the finding of the trial court, that the contract and deed constitute parts of the same transaction, and must be construed together, and that the deed did not, as contended by the city, supersede the contract, so as to vest the title to the submerged land in the city free of the conditions contained in the contract. We think that by the contract, when viewed in the light of the situation of the parties at the time it was made, and the circumstances surrounding the transaction, the parties intended that Joines should convey to the city the lands owned by him in township 2 south, range 1 west, which would be covered by the waters of the lake, and a 25-foot strip above the water line, whether such land was owned by him at the time the contract was made or thereafter acquired.

We find it unnecessary to discuss the question of prescriptive title, in view of our holding as to the effect of the contract and deed.

2. Plaintiffs also contend that in this action for purely injunctive relief the city could not properly ask for the adjudication of title to the submerged portions of the two after-acquired tracts and of its right to fence the lake to prevent pollution thereof by plaintiffs' cattle. In support of this contention they cite Cosden Pipe Line Co. v. Voss, 170 Okla. 536, 41 P. 2d 648, and other similar cases holding that the defendant in an injunction proceeding may not assert a cause of action for damages, and Tracey v. Crepin, 40 Okla. 297, 138 P. 142, holding that a cause of action set up in a cross-bill must be germane to the original controversy. We do not consider those decisions applicable to the present case. Here the plaintiffs did not predicate their right to relief solely on the terms of the contract prohibiting hunting on the lake, but relied also on the ownership of the after-acquired tracts, and asserted a joint possession and the right to the use of the lake for watering their cattle. The city asserted title to all submerged land and an exclusive right to possession, and asked that the rights of both parties be found and established. This they were entitled to do under sections 206 and 207, O. S. 1931, 12 O. S. A. §§ 272, 273. It did not thereby inject new and extraneous matter in the proceeding. The relief asked by the city was necessarily and properly involved in the action for a complete determination thereof, and arose out of the same contracts and transactions upon which plaintiffs relied for relief. In order for the trial court to properly adjudicate the rights asserted by plaintiffs, it was necessary to construe the contract and the deed, and it was necessary and proper for the city to assert its claims thereunder so that the contentions of both parties, due to the contest between them as to the true intent and meaning of the contract and deed, might be disposed of in a single action. While the claims of the city

were not specifically designated as counterclaims, their nature as such was recognized in plaintiffs' motion to strike, and no objection to the pleading on the ground that it was not so designated was made. It seems that both the parties and the trial court treated the answer as embodying a counterclaim. The action was one of equitable cognizance, and the trial court properly proceeded to adjudicate the rights of the respective parties, and grant complete relief. Mathews v. Sniggs, 75 Okla. 108, 182 P. 703; Vinson v. Oklahoma City, 179 Okla. 590, 66 P. 2d 933.

3. The city in its cross-appeal asserts that it, being the absolute owner of the lake under the deed from Joines, is no longer bound by the provisions of the contract to refrain from permitting hunting thereon, and the trial court erred in holding that it may not use its own property as it sees fit. As we have heretofore said, the deed did not supersede the contract of March 10, 1922, but both are a part of the same transaction, and relate to the same subject matter, and must be construed together. Section 9466, O. S. 1931, 15 O.S.A. § 158; Continental Supply Co. v. Levy, 121 Okla. 132, 247 P. 967; 13 C. J. 528; 17 C. J. S. 714; Page on Contracts, Second Edition, section 2568. The contract gave the city rights in connection with the land conveyed which were not embodied in the deed, such as the power to police the lands of Joines to prevent pollution of the water, the right to go on his land to repair pipe lines, the right to maintain, on land not conveyed, a house for a caretaker, and a covenant to deed additional lands if the height of the dam was raised and further land submerged. The contract was not merged in the deed. 18 C. J. 270. When the city executed the contract, and accepted the deed pursuant thereto, it became bound by the restrictions therein contained, just as it became entitled to the rights thereby conferred. It may not disregard the one and assert the other.

The judgment is affirmed.

WELCH, C. J., and OSBORN, BAYLESS, and ARNOLD, JJ., concur.