## LAWRENCE v. KEOKUK STEEL CASTING CO.
### No. 3449.

Circuit Court of Appeals, Tenth Circuit.
Aug. 1, 1947.
Rehearing Denied Sept. 5, 1947.

HUXMAN, Circuit Judge, dissenting

———◇———

Summers Hardy and R. D. Hudson, both of Tulsa, Okl. (Wash E. Hudson and Milton W. Hardy, both of Tulsa, Okl., on the brief), for appellant.

G. C. Spillers, of Tulsa, Okl. (J. O. Boyd, of Keokuk, Iowa, G. C. Spillers, Jr. and Donald S. Voorhees, both of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

On December 28, 1939, Keokuk Steel Casting Company,[1] an Iowa corporation, entered into a contract[2] with J. R. Lawrence[3] under which Lawrence was to act as agent for the Keokuk Company in the State of Oklahoma and designated parts of the States of Texas, Kansas, and Arkansas. The contract provided that the Keokuk Company would pay to Lawrence a 5 per cent commission on all of its products sold in such territory. It further provided:

"This contract is non-transferable.

---

[1] Hereafter called the Keokuk Company.

[2] Hereinafter referred to as the agency contract.

[3] Hereinafter called Lawrence.

"This contract shall remain in force continuously except that should either Company or Agent desire to terminate this contract, they may do so by giving thirty (30) days notice in writing."

Lawrence performed his part of the contract personally until September 1, 1941. He was a graduate of the United States Naval Academy and was subject to call for active duty. He. was notified to report for active duty on September 2, 1941.

On August 23, 1941, Lawrence mailed a letter to K. G. Jansson, vice-president of the Keokuk Company, reading in part as follows:

"I was advised that my orders will be mailed on August 25th directing me to report for active duty on September 2d.

"I of course have not lost sight of the fact that you told me you and Mr. Brown had discussed the possibilities of this thing happening about a year ago and that you would carry on with me and service this part of the territory. This was of course a most generous offer on your part and was certainly appreciated by me, however, this would not have been entirely fair to you and with this in mind some time ago I made arrangements to continue my office and business as in the past. This situation is a temporary one of course and when I am returned to civilian life I will naturally have to have a place to light, therefore the following is the case.

"Mr. James F. Lawrence is going to be the active head of my office and business and of course, Mrs. Murray will continue as in the past and in addition, I have Mr. B. E. Gray who will be in the office contacting and servicing the accounts."

On August 27, 1941, Jansson mailed a letter to Lawrence reading in part as follows:

"Dear Bob: I wish to acknowledge receipt of your letter of August 23rd as well as confirm my conversation with you Monday.

"Needless to say, we are sorry that you have to give up your present contact with our customers. However, we are sure that the set-up outlined in your letter will take care of the servicing of our customers satisfactorily. Please advise your office that they may call on me at any time if they need any special service in connection with any requests that they may have from our customers."

Lawrence continued to service the territory through his employees in accordance with his letter of August 23 until the Keokuk Company undertook to cancel the agency contract, as hereinafter stated. On May 2, 1942, Jansson wrote a letter to Lawrence reading as follows:

"I am sorry that our previous talk on the subject of contract did not result in your acceptance of our offer. In order that you may have a complete understanding of what we did offer, I am attaching hereto a copy of our original proposal submitted to your father. However, under the circumstances, we have decided that we could not offer you personally, this contract, inasmuch as you are now in the service of the United States. We would be willing, however; to contract on the same basis with some party to be designated by you. * * *

"If you do not accept our proposition, there is only one action left open to us, namely, the cancellation of the contract in accordance with the terms thereof. However, you may rest assured that all orders which are accepted by us within the open period of the contract, which of course included the waiting period of approximately thirty days, and in fact all orders which are on our books at the present time will be paid for on a commission basis in accordance with the contract which is now in force.

"May we have your reply by return mail."

The proposed new agency contract referred to in the letter of May 2 provided for a commission of 2½ per cent. Otherwise, it followed the terms of the original agency contract. On May 8, 1942, Lawrence wrote a letter to Jansson reading as follows:

"I was much surprised to receive your letter of May 2, 1942, in which you suggest that I enter into a new contract and agreement with you.

"Based upon your agreement to the effect that our original contract should remain in effect during the duration of the War, I entered the service of the United States Navy. You must understand that my entry into the Service altered all of the affairs of my entire life.

"I shall therefore expect you to perform the agreement which you have already made with me and which you have been carrying out for the past several months."

On May 19, 1942, the Keokuk Company forwarded, by registered mail, a letter to Lawrence reading as follows:

"Pursuant to the last paragraph in our sales representative contract with you dated December 28th, 1939, we are herewith giving you the required thirty days notice of cancellation of this contract to be effective thirty days from the receipt of this notice."

The letter was delivered to Lawrence on May 29, 1942. On June 11, 1942, Lawrence commenced this action against the Keokuk Company to recover damages for breach of contract.

In his first claim for relief in his second amended complaint, Lawrence set up the agency contract and the letters of August 23 and August 27, and further alleged that, in the latter part of 1940 or the early part of 1941, he and the Keokuk Company orally agreed that, in the event he should enter the Armed Forces of the United States, the agency contract would continue in force and effect for the duration of the war, and that, during his absence, the Keokuk Company would service and solicit the accounts in the territory at its own expense and would continue to pay him a commission of 5 per cent under the agency contract; that on August 23, 1941, by letter of that date, he advised the Keokuk Company that the agreement of the latter to service the accounts at its own expense was too generous and that he had arranged to have the accounts in the territory serviced during his absence in the military service by James F. Lawrence and B. E. Gray; that on August 27, 1941, the Keokuk Company, by letter of that date to Lawrence, agreed to the proposed modification of the oral agreement; that Lawrence reported for active duty in the United States Navy on Sep-

tember 2, 1941; that he had, in all respects, carried out the terms and conditions of the agency contract as thus modified. He further alleged the offer of the new contract made by the Keokuk Company in 1942 and the notice of cancellation of the agency contract mailed to him by the Keokuk Company. The trial court sustained a motion to dismiss such claim.

In his third amended complaint, Lawrence set up as his second claim for relief that, in April, 1941, he and the Keokuk Company orally agreed that, in the event he should enter the Armed Forces of the United States, for the duration of his service in the Armed Forces and until he should return to private life, the Keokuk Company would service the accounts and solicit business free of expense to him and would continue to pay him 5 per cent commission on all material sold in the territory embraced in the agency contract; that, relying on such oral contract, he entered the United States Navy; that after the oral contract was entered into, he proposed a modification thereof, to the effect that, instead of the Keokuk Company servicing the accounts, he would maintain offices and employ persons to solicit and service such accounts; that on August 27, 1941, the Keokuk Company agreed in writing to such proposed modification. He also set up the Soldiers' and Sailors' Civil Relief Act, 1940, as a bar to the cancellation of the agency contract by the Keokuk Company.

The Keokuk Company interposed a motion for summary judgment. The trial court held that, under the provisions of 15 Okl.St.Ann. § 237, a written contract may be altered only by a contract in writing, or a fully executed oral agreement; that the alleged oral contract was not fully executed; that the two letters of August 23 and August 27 did not constitute a contract altering the agency contract; that the facts alleged were not sufficient to estop the Keokuk Company from canceling the agency contract or to constitute a waiver of its right to cancel such agency contract; and that the Keokuk Company was not barred from canceling the agency contract by the Soldiers' and Sailors' Civil Relief Act of 1940. The cause came on for trial on the issue of an alleged custom

pleaded by Lawrence. The trial court found that the evidence wholly failed to support the alleged custom; that the agency contract was canceled by the notice above referred to; and that there was due to Lawrence for commissions, $2,531.56, and awarded judgment for that amount and assessed the costs equally between the parties. Lawrence has appealed.

The two claims for relief adverted to above are inconsistent but, under Rule (8) (e) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, a plaintiff may state as many separate claims as he has, regardless of consistency.

■■ We find no provision in the Soldiers' and Sailors' Civil Relief Act, 1940,[4] applicable to the agency contract. Lawrence did not act to his detriment in reliance on any promise or representation made by the Keokuk Company. He did not volunteer to serve in the Navy. He was subject to call for active duty and was called to report September 2, 1941. He received the benefits of the agency contract until the Keokuk Company attempted to cancel it in 1942.

In his second claim for relief, Lawrence alleged that in April, 1941, he and the Keokuk Company orally agreed that, in the event he should enter the Armed Forces of the United States, the Keokuk Company would service the accounts and solicit business tree of expense to him, and would continue to pay him 5 per cent commission on all material sold in the territory embraced in the agency contract for the duration of his services in the Armed Forces and until he should return to private life. Obviously, that agreement was not supported by any consideration moving from Lawrence. But he further alleged that, after such oral agreement was entered into and he had been called to report for service in the Navy, he proposed in writing that, instead of the Keokuk Company servicing the accounts, he would maintain an office and employ persons to solicit orders and service such accounts, and that, on August 27, 1941, the Keokuk Company agreed in writing to such proposed modification. The oral agreement, as modified by the letters of August 23 and August 27, embraced an entirely new arrangement between the parties. It was not a mere alteration of the agency contract, but an independent contract, complete in every detail, and amounted to an abrogation of the agency contract. The new contract was supported by a new consideration, namely, the promise of Lawrence to employ persons to solicit orders and service the accounts in the territory and to maintain his office staff during the period of his service in the Navy.

■ 15 Okl.St.Ann. § 237 was derived either from § 968 of the 1877 Civil Code of the Territory of Dakota or § 1698 of the Civil Code of California (Vol. 2, Deering's Ann.Codes of Cal.1886, § 1698), the three statutes being identical.[5]

In Levin v. Hunt, 70 Okl. 63, 172 P. 940,

---

[4] 50 U.S.C.A.Appendix, §§ 501–590.

[5] In the preface to the Revised Codes, Dakota, 1877, the following appears:

"The Civil Code embraces those divisions of the law which relate to persons and their relations, to property of every kind, and to obligations of every nature in relation to persons and property, including the entire subject of private corporations; and as a code of written law, had its origin in the uncompleted labors of a commission appointed by the state of New York. This part of their work was not perfected or enacted in that state, but first took the form of a statute in an act passed at the fifth session of the legislative assembly of Dakota, and approved January 12th, 1866, thus having been in force here, though not in a complete form, over eleven years. It was then taken by a commission in California in 1872, and revised and amended, and was enacted as the law of that state in 1873, and has now been again revised, enlarged and re-enacted by Dakota as it appears herein."

Section 1698 of the Civil Code of California, as originally enacted in 1872, read as follows: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise, except as to the time of performance, which may be extended by any form of agreement." As amended on March 30, 1874, effective July 1, 1874, the clause after the word "otherwise" was eliminated.

Section 843 of the Civil Code of the Territory of Dakota, which was approved January 12, 1866 (1866 Laws

941, the court, after quoting § 237, supra, said: "While under the above-quoted statute, it is plain that the parties to a written contract cannot alter the same by parol agreement, it is well settled that they may, by parol, rescind, discharge, or terminate a written contract, or may enter into a new contract as a substitute for the old."

In Schlegel v. Kinzie, 158 Okl. 93, 12 P.2d 223, 225, and in Minnehoma Oil Co. v. Koons, 99 Okl. 266, 226 P. 1048, 1058, the court approved the language of the Levin case quoted above. See, also, Dike v. Martin, 85 Okl. 103, 204 P. 1106, 1108, and Smith-Wogan Hardware & Imp. Co. v. Jos. W. Moon Buggy Co., 26 Okl. 161, 108 P. 1103, 1104. Cf. Herren v. Oklahoma Natural Gas Co., 196 Okl. 501, 166 P.2d 95, 97.

The construction placed on § 237, supra, in the Levin case is in accord with the construction placed on the California statute [6] by the California courts.[7] In Pearsall v. Henry, 153 Cal. 314, 95 P. 154, 157, 159, the court said: "But we think the agreement of April 23, 1901, as the same is found by the court, was not a modification or alteration of the written agreements, but was a new agreement superseding those then existing. The finding which has already been quoted at length does not indicate that the parties intended to alter one or more of the terms of the written agreements, leaving those agreements in other respects to remain in force. The idea conveyed by the finding is that these agreements were virtually abrogated, and that

the new oral agreement was to take their place. It imposed new obligations upon the parties, and each, in consideration of new promises then made by the other, agreed to do acts which, according to his own contention, he was not then bound to perform. To such new agreement, substituted for an existing written agreement, section 1698 of the Civil Code has no application."

In Klein Norton Co. v. Cohen, 107 Cal. App. 325, 290 P. 613, 616, the court said: "Regarded as a modification, alteration, or change of the written contract, the oral agreements must fail. The effect of the oral contract, if the latter was made—and it was found by the court to have been made—was not to modify or alter the written agreement, but was to effect or create a new contract. Smyth v. Tennison, 24 Cal.App. 519, 521, 141 P. 1059; Treadwell v. Nickel [194 Cal. 243, 228 P. 25], supra. It will be borne in mind that the written agreement of July was not to continue for any definite time, but might be terminated at any time. Conditions had changed and a new offer was made by respondent to appellant, which offer the latter accepted. When the parties agreed upon these new terms and conditions it had the effect of terminating, canceling, and ending the written agreement of July 1, 1923. Pearsall v. Henry, supra; Stockton Combined Harvester, etc., Works v. Glens Falls Ins. Co., 121 Cal. 167, 53 P. 565; Cross v. Ramdullah, 9 Cir., 274 F. 762, 767. It has been held many times that a written agreement

---

of Dakota Territory, § 843) read as follows: "A contract under seal may be altered by an agreement under seal, or by an executed agreement without seal; and not otherwise, except as to the time of performance, which may be extended by any form of agreement."

As modified by the 1877 revision (Revised Codes, Dakota 1877, § 969) it read as follows: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

Section 237, supra, was enacted in Oklahoma Territory in 1890. Thus, it would appear that Dakota Territory derived § 969, supra, from the Revised California Code, and Oklahoma Terri-

tory derived § 237, supra, either from Dakota or California.

[6] Cal.Civil Code § 1698.

[7] See Pearsall v. Henry, 153 Cal. 314, 95 P. 154, 157; Id., 153 Cal. 314, 95 P. 159; Credit Clearance Bureau v. George A. Hochbann Contracting Co., 25 Cal.App. 546, 144 P. 315; Klein Norton Co. v. Cohen, 107 Cal.App. 325, 290 P. 613, 616; Dugan v. Phillips, 77 Cal. App. 268, 246 P. 566; McClure v. Alberti, 190 Cal. 348, 212 P. 204; Adler v. Friedman, 16 Cal. 138; San Roque Properties, Inc., v. Pierce, 18 Cal.App. 2d 379, 63 P.2d 1198; Proud v. Strain, 11 Cal.App. 74, 103 P. 949, 950.

The Pearsall case and the Credit Bureau case are cited with approval in the Levin case.

may be abrogated by an oral contract and that in such a case section 1698 of the Civil Code has no application."

In Walker v. Johnson, 102 Okl. 9, 227 P. 113, 114, the court criticized the Levin case and said it was in conflict with Maisen v. Cartwright, 43 Okl. 737, 144 P. 375. However, we feel impelled to follow the last pronouncement of the Supreme Court of Oklahoma. Under the doctrine announced in the Levin case, such second claim for relief was good, and the court erred in disposing of it on summary judgment. It should have permitted Lawrence to introduce evidence in support of such claim.

Unless the agency contract was wholly abrogated by the oral contract, as modified by the letters of August 23 and August 27, we are of the opinion that such letters constituted a modification of the agency contract. Clearly, the agency contract contemplated the personal services of Lawrence. In response to the proposal of Lawrence, the Keokuk Company agreed that the services should be performed by James F. Lawrence and the office staff of Lawrence. The letter of August 23 recited that the Keokuk Company had offered, in the event Lawrence was called for service in the Navy, to carry on with him and service the territory embraced in the agency contract for him. Such letter constituted a modified offer on the part of Lawrence to continue to service the territory through James F. Lawrence and the office staff of Lawrence. The modified offer was accepted by the Keokuk Company by its letter of August 27.

■ The clause, "that you would carry on with me and service this part of the territory" is ambiguous. The language which follows indicates that Lawrence construed it to mean that the arrangement would continue during his service in the Navy. Read in the light of the previous negotiations, the quoted clause might be construed as the recital of an offer on the part of the Keokuk Company to service the territory for Lawrence during his service in the Navy. If so, the period during which the arrangement was to continue was embraced in the modified proposal of Lawrence set forth in his letter of August 23. While the general rule is that parol evidence may not be introduced to contradict, add to, or vary the terms of a written contract, where the language of a written contract is ambiguous, parol evidence of the negotiations preceding and leading up to the making of the written contract, and the circumstances surrounding the execution of the written contract may be introduced to enable the court to arrive at the true intent and meaning expressed in the written contract.[8]

■ We are of the opinion that the trial court erred in disposing of the issues with respect to the alleged modification of the agency contract on summary judgment, and that it should have received evidence with respect to the oral negotiations of the parties prior to August 27, 1941, and, in the light of such evidence, determined the true intent and meaning of the letters of August 23 and August 27.

On remand, the plaintiff should recast his pleadings, setting up such claims in a single complaint. If, on a new trial, the evidence established the second claim for relief, it would be unnecessary to consider the first.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

HUXMAN, Circuit Judge (dissenting).

I am of the view that the judgment of the trial court should be affirmed, for the reason stated in the court's findings of fact and conclusions of law.

8 Banks v. City of Ardmore, 188 Okl. 611, 112 P.2d 372, 376; Wood v. Polk, 193 Okl. 156, 141 P.2d 796, 797; Drumwright v. Brown, 76 Okl. 162, 184 P. 110, 111. See, also, Georgia State Sav. Ass'n of Savannah, Ga., v. Elias, 192 Okl. 227, 135 P.2d 36.